## WEST v. RADIO-KEITH-ORPHEUM CORPORATION.
### No. 354.

Circuit Court of Appeals, Second Circuit.
April 30, 1934.

See, also, 68 F.(2d) 869.

Schlesinger & Schlesinger, of New York City (Herbert S. Colton and Walter C. B. Schlesinger, both of New York City, of counsel), for appellant.

William J. Donovan, of New York City (Carl E. Newton, of New York City, of counsel), for receiver.

William D. Whitney and Cravath, de Gersdorff, Swaine & Wood, all of New York City, for Radio Corporation of America.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendant was a holding company, its assets consisting chiefly of the shares of moving picture companies which it controlled and operated as subsidiaries, and of notes of those companies, secured by mortgages on films. Being itself in need of further funds to lend to them, on July 1, 1931, it borrowed $6,000,000 from the Chemical Bank & Trust Company and Commercial Investment Trust, giving in exchange an issue of notes, which it secured by pledging with the bank as trustee the shares and notes just mentioned. By the following autumn it was again in need, and on December 1, 1931, borrowed $11,600,000 more from its own shareholders, on debenture bonds, secured by a second lien on the pledged shares and notes. The Radio Corporation, which owned sixty-five per cent. of the defendants' shares, subscribed for about eighty-five per cent. of this loan; but on January 1, 1933, it had still not taken up $2,400,000, of its subscription. As it was part of the agreement that there should be reserved out of the second loan enough to redeem all outstanding notes, and as about $4,300,000 of these were still unpaid, the Radio Corporation could, and did, insist that if it was to pay the balance of its subscription, this must be applied to the notes. Moreover, in spite of an extension in the due date of the notes, it had become apparent before January 1, 1933, that the defendant must default in their payment, in which case, after a prescribed period of grace, the voting power of the pledged shares would vest in the trustee, and the pledged property might be sold. It had also become plain that the defendant must pass through a receivership, itself a default accelerating the notes. A bill for a receiver was filed January 23, 1933, and on January 26 an agreement was made between the defendant, the Radio Corporation and the two note-holders, the substance of which was that the Radio Corporation should abandon a claim it had made of a right to set-off against its unpaid subscription the debenture bonds which it then held, and that it should pay that subscription forthwith upon the outstanding notes, thereby reducing their amount to about $1,800,000. The two note-holders agreed in return that the trustee, to whom the voting power of the pledged shares would pass on the appointment of a receiver, would vote for such directors as the Radio Corporation should direct, and in other matters in accordance with the wishes of a committee of three selected, one by each of the two note-holders and the third by the Radio Corporation. The notes were extended and the receivership was not to be considered as a fresh default.

Thus things stood when the receiver was appointed and took possession on the twenty-seventh. In August the agreement of January 26, 1933, was modified by two letters: The Radio Corporation and the two note-holders agreed to follow the wishes of the receiver as to the general management of the subsidiaries, so far as compatible with their interests; to pay the receiver $60,000 out of payments upon the pledged notes to defray its expenses; and to obtain its approval in the election of directors. Wishing to get the court's sanction for the resulting situation, the receiver gave notice to all creditors that on August thirty-first it would apply to the court for instructions. Among those served was the appellant here, a large unsecured

creditor. The petition asked that the modification of the agreement of January twenty-sixth contained in the letters just mentioned, be authorized; that the receiver might be permitted to cause the subsidiaries to refund their notes into permanent form, and to arrange with the trustee that payments made upon them should be at once lent back to them for the production of new films, which should in turn be mortgaged in substitution for the old.

The appellant appeared on the return day and objected to the proposed order, apparently supposing that the agreement of January twenty-sixth was to be confirmed. That agreement, it argued, was unlawful because it disposed of all the defendant's assets, leaving nothing for general creditors like itself. Especially it protested against the payment by the Radio Corporation of the remainder of its subscription to the note-holders. After two hearings, a week apart, in which all creditors were heard who wished to speak, the court entered the order appealed from, granting the prayer of the petition. The creditor then appealed.

■ The merits of the appeal are easier to dispose of than the right to appeal itself. Indeed we have found it impossible to lay our hands upon precisely what the appellant complains of. Assuming that it is the agreement of January 26, 1933, and disregarding the fact that the order does not confirm it, nothing can be plainer than that the general creditors were not aggrieved by it, or by anything which should be done to carry it out. Nobody attacks, or can attack, the validity of the original pledge of the shares and secured notes of the subsidiaries; the money was received and used and the terms were agreed upon while the defendant was solvent. Again, nobody attacks, or can attack, the validity of the second and junior pledge of the same assets for the benefit of the debenture bonds. Once more, the money was had and used. The payment direct to the note-holders of the unpaid subscription of the Radio Corporation did not further encumber the pledged assets; it was merely an exchange of one lien for another. Even were we to assume that the money was available to the defendant as free assets, the question would merely be whether it was better to encumber the pledged property with $2,400,000 more, and receive the cash for general use; or to leave the aggregate of the two liens as it was. That would depend upon what value might reasonably be attributed to the equity in the pledged property. If the receiver alleged that it ought

to be preserved as the only reliance of the defendant, and that it was better to keep it free than to have the added cash, we would not interfere with the discretion of the judge in passing on the issue. But the unpaid subscription was not free assets. In the first place the Radio Corporation disputed its liability; in the second, by the debenture bond agreement, if compellable at all, it could force the application of its subscription to the notes. The defendant got every lawful benefit of the payment; its creditors could ask no more.

■ Nor was there more in the claim that the defendant improperly surrendered its voting rights in the subsidiaries' shares. By the original pledge it agreed to their surrender upon a contingency, that is, the receivership, which had come to pass. If the Radio Corporation captured some share of voting power, that was a benefit to the defendant, for that corporation was its principal shareholder, and deeply interested in its fate. Again it was not a detriment to the defendant to allow the money which was paid upon the pledged notes of the subsidiaries to be lent back to them in the creation of new loans. The defendant had been the only source of capital for the subsidiaries, but its spring had run dry; no other was available. The moneys paid upon the notes were the only capital accessible, a "revolving fund," out of which the subsidiaries might keep their business alive, and give a possible value to their shares. True, the new films mortgaged were not already covered by the pledge, and indeed could not be, for they were after acquired, and not property of the defendant anyway. But without them the trustee would not only foreclose the old films, but the shares and notes as well, thus stripping the defendant bare. So far as appeared, it was better to subject new films to the lien of the old indebtedness. As to the letters of August, the defendant through its receiver was the only gainer by these, receiving some share in the management of the subsidiaries, and a substantial sum towards the receivership expenses. On the merits the order was plainly right.

■■ The right to appeal depends upon two questions; first, whether the creditor had any standing to appeal; second, whether the order was appealable. As to the first it is indeed well settled that generally speaking no person, not a party to a suit, may appeal. Bayard v. Lombard, 9 How. 530, 551, 13 L. Ed. 245; Ex parte Leaf Tobacco Board of Trade, 222 U. S. 578, 32 S. Ct. 833, 56 L. Ed. 323; Louisiana v. Jack, 244 U. S. 397,

402, 37 S. Ct. 605, 61 L. Ed. 1222. The reason for this is that if not a party, the putative appellant is not concluded by the decree, and is not therefore aggrieved by it. But if the decree affects his interests, he is often allowed to appeal. This has long been true, for example, as to bidders and purchasers at a judicial sale. Blossom v. Milwaukee, etc., R. R. Co., 1 Wall. 655, 17 L. Ed. 673; Williams v. Morgan, 111 U. S. 684, 4 S. Ct. 638, 28 L. Ed. 559; Kneeland v. American Loan Co., 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379. Again in Mitchell v. Lay, 48 F.(2d) 79 (C. C. A. 9), a person enjoined in a receivership suit was allowed to appeal, though not formally a party. There are many interlocutory decrees passed in such a sequestration suit as this, on which creditors are not cited; it has been the general understanding of the bar that in the ordinary guidance of a receiver they need not be consulted. Missouri Pac. Ry. Co. v. Texas & Pac. Ry. Co. (C. C.) 31 F. 862; Street on Federal Equity Practice, § 2617. How far in such cases they will be bound we need not consider. Birmingham, etc., Co. v. Atlanta, etc., Ry. (D. C.) 271 F. 731, 739. The receiver did not take that course; it chose to make them parties pro hac vice in order to protect itself; and though we have found little on the point, it seems to us that by so doing it concluded them against further protest. Kerr v. Blodgett, 48 N. Y. 62; Dewey v. St. Albans Trust Co., 60 Vt. 1, 12 A. 224, 6 Am. St. Rep. 84. Indeed were it not so, the receiver could get no protection from the court in any way. But if the creditors are concluded by such an order, the reason for refusing them an appeal ends. So we held in Christian v. Hoe (C. C. A.) 63 F.(2d) 221. See, also, Macdonald v. Ætna Indemnity Co., 88 Conn. 571, 577, 92 A. 154; Links v. Connecticut River Banking Co., 66 Conn. 277, 283, 33 A. 1003 (semble). Such situations are to be distinguished from that in Newberry v. Davison Chemical Co., 65 F.(2d) 724, 729 (C. C. A. 4). Here the creditors were brought in in invitum; there, though they had avoided all contact with the suit, they tried to affect its course, striving to be, as it were, at once within and without. It seems to us that the appellant has a standing in this court.

■ We think too that the order is "final." At least it authorized the receiver, acting through his control over the subsidiaries, to mortgage new films for the money which the companies got back from the note-holders. No further order was necessary to that end; the receiver would at once act upon the leave then granted. Although the voting power over the subsidiaries' share was not legally his; being then with the committee of three as respects such matters, the letters of August, 1933, which the court confirmed, restored to the receiver some control, probably in fact a very substantial control, and it was this which he proposed to use. So far as he had it, that use would be final; that is, it would be irrevocable in result. The creditors, though their interest was indeed indirect, were therefore concluded, and could get no relief except by appeal. Moreover, while the order did not, and perhaps could not, confirm the agreement of January 26, 1933, the letters of August associated the receiver in its execution, "implemented" it, as the phrase is, and the order at least made it impossible thereafter for the receiver to attack it. This too was irrevocable.

It is impossible to find a decision quite on all fours. Our dismissal of one appeal in Christian v. Hoe, supra, 63 F.(2d) 221, depended upon a clause in the order expressly limiting its effect. On the other hand we went much further to entertain an appeal in American Brake Shoe Co. v. N. Y. Railways Co., 282 F. 523, than we need here. The variants are too numerous to catalogue; they are set out at length in Rector v. U. S. (C. C. A.) 20 F.(2d) 845, 860–871 (C. C. A. 8); and it must be owned that when all is said, it is not very plain just what are the "substantial rights" that a "final" order must settle. Among the nearer of the decisions in the Supreme Court are Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, and Williams v. Morgan, supra, 111 U. S. 684, 4 S. Ct. 638, 28 L. Ed. 559, which touched allowances, and In re Farmers' Loan & Trust Co., 129 U. S. 206, 9 S. Ct. 265, 32 L. Ed. 656, and Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 S. Ct. 736, 34 L. Ed. 97, which concerned interlocutory proceedings in a receiver's administration. See, also, Guarantee, etc., Co. v. Philadelphia, etc., R. R. Co., 69 Conn. 709, 714, 38 A. 792, 38 L. R. A. 804.

Order affirmed.