### In re Anthony R. MARTIN–TRIGONA, Debtor.

### In re NEW HAVEN RADIO, INC., Debtor.

**Bankruptcy Nos. 5–81–00254, 5–81–00253.**

United States Bankruptcy Court, D. Connecticut.

Jan. 22, 1982.

Anthony R. Martin-Trigona, pro se.

Daniel Meister, Norwalk, Conn., Trustee, In re New Haven Radio, Inc.

Irving Perlmutter, New Haven, Conn., for Trustee, In re New Haven Radio, Inc.

Richard Belford, New Haven, Conn., Trustee, In re Anthony R. Martin-Trigona.

Richard M. Coan, New Haven, Conn., for Trustee, In re Anthony R. Martin-Trigona.

## SUPPLEMENTAL MEMORANDUM

ALAN H. W. SHIFF, Bankruptcy Judge.

### Sanctions For Civil Contempt (28 U.S.C. § 1481)

On January 15, 1982, this court found Anthony Robert Martin-Trigona in civil contempt for refusing to testify at an examination ordered pursuant to Rule 205 of the Rules of Bankruptcy Procedure and on January 18, 1982 ordered that he be committed to the custody of the Attorney General of the United States until purged of contempt or further order of the court. The purpose of this memorandum is to outline the statutory basis and authority for that order.

### I

### BACKGROUND

The above-captioned Chapter 11 code cases were transferred to this district from the Southern District of New York. In each case, trustees were appointed pursuant to 11 U.S.C. § 1104. Although these cases have not been consolidated for administration, certain scheduling accommodations were made in the interest of judicial economy and the convenience of the trustees. Martin-Trigona, debtor in Case No. 5–81–00254, alleged sole stockholder in Case No. 5–81–00253 and a convicted federal prisoner in the custody of the Attorney General of the United States, was brought to this court pursuant to a Writ of Habeas Corpus for purpose of participating in certain aspects of the administration of these cases.

On January 8, 1982, during the course of the proceedings, both trustees applied for an order to conduct an examination of Martin-Trigona under Rule 205 of the Rules of Bankruptcy Procedure [1] and arrangements were made with the United States Marshall for the return of Martin-Trigona to court on Friday, January 15, 1982 for that purpose.

On January 15, 1982, Martin-Trigona appeared in court and was permitted to make a preliminary statement, during which he announced his intention to refuse to participate in the examination. Martin-Trigona thereupon invited the court to find him to be in "civil contempt", so that he could have his conduct certified to a Judge of the United States District Court before whom he claimed he could assert a challenge to the jurisdiction of the bankruptcy court.

Martin-Trigona was then sworn in and an attempt was made by the trustee's attorney in Case No. 5–81–00254 to question him pursuant to Rule 205. Martin-Trigona again refused to participate and this time insisted that the court find him to be in "civil contempt" and certify the matter to the district court. This court ordered Martin-Trigona to answer the trustee's questions, and he again refused. He was asked if he understood the consequences of his refusal to obey the lawful orders of this court. He said he did and again insisted that his conduct was intended to result in his being found in "civil contempt". He was accordingly found in civil contempt.

### II

### DISCUSSION

Martin-Trigona, a graduate of law school, demonstrated throughout several days of proceedings and innumerable motions, applications and briefs that he was knowledgeable in the bankruptcy field.

While I agree with Martin-Trigona that his failure to obey the lawful order of this court constituted civil contempt, I reject his claim that he is entitled to a certification to the district court.

Independent of the Bankruptcy Rule 205 order, Martin-Trigona in *In re Martin-Trigona* is under a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title". 11 U.S.C. § 521(2)

---

1. Bankruptcy Rule 205

(a) *Examination on Application.* Upon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

## 1.

### Civil Contempt

■ The distinction between civil and criminal contempt is often blurred. The same behavior might manifest characteristics of both. *Bessette v. Conkey*, 194 U.S. 324, 329, 24 S.Ct. 665, 667, 48 L.Ed.2d 997 (1903). The decisive distinction, however, is not the behavior which gave rise to the contempt but rather the character and purpose of the sanction to be imposed by the court. See *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1965); *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *In re Reed*, 11 B.R. 258, 266, 7 B.C.D. 777, 781 (Bkrtcy.D.Utah 1981). When the purpose of the contempt sanction is primarily remedial and coercive as opposed to punitive, the contempt is generally classified as civil. See e.g., *Shillitani, supra*. In *Shillitani*, the Supreme Court concluded that the contemnors' imprisonment for disobeying an order to testify related to civil contempt. The court reasoned as follows:

> As the distinction was phrased in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 449 [31 S.Ct. 492, 501, 55 L.Ed. 797] (1911), the act of disobedience consisted solely "in refusing to do what had been ordered," i.e., to answer the questions, not "in doing what had been prohibited." And the judgments imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey the orders to testify. When the petitioners carry "the keys of their prison in their own pockets," *In re Nevitt*, 117 F. 448, 461 (C.A. 8th Cir. 1902), the action "is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees." *Green v. United States*, 356 U.S. 165, 197

[78 S.Ct. 632, 650, 2 L.Ed.2d 672] (1958) (Black, J., dissenting). In short, if the petitioners had chosen to obey the order they would not have faced jail.

Id. at 368, 86 S.Ct. at 1534.

■ In the instant cases, the trustees applied for and were granted leave to examine Martin-Trigona under Bankruptcy Rule 205. He refused to cooperate or participate. The order of this court, incarcerating Martin-Trigona until he is purged of contempt, is intended to preserve and enforce the rights of the trustees to examine Martin-Trigona by applying a sanction which is remedial and coercive in nature.

## 2.

### Bankruptcy Court's Power to Sanction Civil Contempt

Operating on the assumption that this court was bound by Rules 920(a)(3) and (4) of the Rules of Bankruptcy, Martin-Trigona contended that this court was required to certify his contemptuous behavior to the district court. The Rules of Bankruptcy Procedure, however, are only applicable to the extent that they are not inconsistent with the Bankruptcy Reform Act,[2] and Rules 920(a)(3) and (4) are inconsistent with section 241 of Title II of the Bankruptcy Reform Act which amended 28 U.S.C. § 1481.[3]

Under Rule 920(a)(3) a [bankruptcy judge] could not order imprisonment or impose a fine of more than $250.00 as punishment for any contempt, civil or criminal. Under Rule 920(a)(4) "If it appears to a [bankruptcy judge] that conduct prohibited by § 41(a) of the [bankruptcy] Act [of 1898] may warrant punishment by imprisonment or by fine of more than $250.00, he may certify the facts to the district judge." Under 28 U.S.C. § 1481, however, Congress gave bankruptcy judges implicit authority

---

**2.** Section 405(d) of Title IV of the Bankruptcy Reform Act of 1978.

**3.** 28 U.S.C. § 1481

§ 1481. Powers of Bankruptcy Court. A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal

contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

This section is applicable during the transition period. Section 405(b) of Title IV of the Bankruptcy Reform Act of 1978.

to sanction civil contempt by fine or incarceration but retained the limitations on punishment of criminal contempt by imprisonment.[4]

## III

### CONCLUSION AND ORDER

On the basis of the facts, statutory authority and case law governing these proceedings, I have concluded that Martin-Trigona's behavior constituted civil contempt, which did not require certification to a judge of the district court and is appropriately sanctioned by a bankruptcy court order committing him to the custody of the Attorney General of the United States until he is purged of contempt.

---

**4.** "This section gives the bankruptcy court the powers of a court of equity, law, and admirality [sic]. It is the concomitant of the bankruptcy courts [sic] increased jurisdiction, and is necessary to enable the bankruptcy court to exercise that jurisdiction and its powers under the bankruptcy code.

It is in addition to any power granted under 28 U.S.C. 1651 (the All Writs Statute) or under section 105 of the bankruptcy code." H.R.Rep. No.595, 95th Cong., 1st sess. 448 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6404.

The clear conflict between section 405(b) which makes 28 U.S.C. § 1481 applicable during the transition period and section 404(d)

which makes section 41 and Rule 920 applicable during the transition period must be resolved in favor of the former. See *In re Reed*, 11 B.R. 258, 263 n.4, 7 B.C.D. 777, 779 n.4 (Bkrtcy.D.Utah, 1981); *In re Eisenberg*, 7 B.R. 683, 690 (Bkrtcy.E.D.N.Y.1980); See generally 1 *Collier on Bankruptcy* Par. 704[e], 7–46 (15th ed. 1979); 1 Norton *Bankruptcy Law and Practice* § 4.31, 73 (1981). It should be added that section 309(c) of the Bankruptcy Amendments Bill of 1981 would strike "41" from section 404(d). S.863, 97th Cong., 1st Sess. (1981). The amendment is reported as a technical change. S.Rep.No.150, 97th Cong., 1st Sess. 26 (1981).