MESKILL, Circuit Judge:
On January 15, 1982, Judge Shiff of the United States Bankruptcy Court for the District of Connecticut found Anthony Martin-Trigona in civil contempt. Judge Shiff ordered Martin-Trigona committed to the custody of the United States Attorney General when he refused during the bankruptcy proceedings to answer questions relating to the administration of his bankrupt estate and the bankrupt estate of a corporation he owned. In re Martin-Trigona, 16 B.R. 792 (Bkrtcy.D.Conn.1982). On January 29, Martin-Trigona petitioned the district court for a writ of habeas corpus alleging that the bankruptcy court lacked the power to imprison him for civil contempt. District Judge Daly granted habeas corpus relief and ordered Martin-Trigona released from custody. Martin-Trigona v. Shiff, 19 B.R. 1001 (D.C.Conn.1982). The trustees in bankruptcy brought this appeal.
Because we hold that the district court improvidently granted habeas corpus relief, we do not reach the merits of petitioner’s claim. Ordinarily, one cannot, by a petition for a writ of habeas corpus, obtain review of an order that is appealable either in state or federal court. Because Martin-Trigona failed to seek leave to appeal the order adjudging him in civil contempt, it was error for the district court to grant habeas corpus relief. Accordingly, we vacate the judgment below and remand with instructions to dismiss the petition and to take such further action as the district court deems appropriate on any certified matters.
*382 BACKGROUND
Anthony Martin-Trigona is no stranger to the federal courts. His tour through the court system is marked by a persistent refusal to cooperate with court orders and purposeful efforts to delay and jaundice court proceedings. His distinctive brand of pro se advocacy has reached this Court after a barrage of procedural and jurisdictional challenges which have frustrated the courts below and have caused these bankruptcy proceedings to advance at a snail’s pace, with little progress made toward settling creditors’ claims during the past two and one-half years.[1]
On September 10, 1980, Martin-Trigona, as owner and president of New Haven Radio, Inc. (corporate estate), filed a petition for reorganization of the company pursuant to 11 U.S.C. § 1101 et seq. (Supp. Ill 1979) in the United States Bankruptcy Court for the Southern District of New York. On or about December 2, 1980, Martin-Trigona’s personal estate also came under the bankruptcy court’s jurisdiction. In January 1981 his two bankruptcy cases were ordered transferred to the United States Bankruptcy Court for the District of Connecticut where they were placed on the docket of Bankruptcy Judge Shiff. Martin-Trigona appealed the transfer order to the United States District Court for the Southern District of New York. He filed the notice of appeal without applying for a stay of the transfer order or seeking leave to appeal.[2]
Administration of the two estates commenced in Connecticut. The trustees applied pursuant to Bankruptcy Rule 205(a) for an order to conduct an examination of Martin-Trigona.[3] When Martin-Trigona appeared pro se before the bankruptcy court on January 15, 1982,[4] he announced his resolve not to participate in the examination because, in his opinion, the bankruptcy court lacked jurisdiction over the cases while his appeal of the transfer order was pending in the Southern District of New York. Martin-Trigona “invited” the court to find him in civil contempt so that he could have his conduct certified to the district court pursuant to Bankruptcy Rule 920(a)(4)[5] where he planned to air his Chal *383 lenge to the jurisdiction of the bankruptcy court. Judge Shiff ordered Martin-Trigona to answer the trustees’ questions, and when he refused, the court found him in civil contempt and committed him to the custody of the attorney general. Judge Shiff reasoned that section 241(a) of the Bankruptcy Reform Act of 1978 (Reform Act), Pub.L. No. 95-598, 92 Stat. 2549, 2668, was intended by Congress to confer on bankruptcy judges the power to sanction civil contempt by fine or imprisonment, see 28 U.S.C. § 1481 (Supp. IV 1980), and that any limits on the bankruptcy judge’s contempt powers under Bankruptcy Rule 920(a) were inapplicable to the extent inconsistent with the Reform Act. See Reform Act § 405(d), 92 Stat. 2685.
On January 29, 1982, Martin-Trigona filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut.[6] 28 U.S.C. § 2241 (1976). Oddly, the petition named Bankruptcy Judge Shiff as defendant. On March 31,1982, District Judge Daly ordered the trustees, as the real parties-in-interest, and Judge Shiff, through the United States Attorney, to respond and show cause why a writ of habeas corpus should not issue. The trustees responded on April 2, 1982. The United States Attorney’s Office responded the same day, but declined to argue the merits of the habeas corpus petition.[7]
Without hearing oral argument, Judge Daly filed a memorandum of decision on April 19,1982, concluding that the bankruptcy court was not empowered to order a recalcitrant witness imprisoned for civil contempt.[8] Martin-Trigona v. Shiff, 19 *384 B.R. 1001, 1003 (Dist.Ct.Conn.1982). Judgment was entered the following day granting habeas corpus relief and ordering Martin-Trigona released from custody.
Notice of appeal from the judgment was filed on April 22,1982. The trustees of the corporate and personal estates are on the brief in this appeal. In addition to their contention that the bankruptcy judge was empowered under the Reform Act to incarcerate Martin-Trigona for civil contempt, the trustees also complain that the district court erred in granting habeas corpus relief without a hearing and without providing the trustees an opportunity to present opposing claims of law. Martin-Trigona has since filed several motions to dismiss this appeal. Those motions are considered first.
DISCUSSION
A. Appeal, Jurisdiction and Justiciability
Martin-Trigona argues first that Judge Daly’s decision is not a final judgment and therefore is not appealable at this time. Additionally, he asserts that no lawful appeal has been taken from the district court’s order releasing him from custody. Finally, *385 he maintains that this controversy is now moot. Each of these contentions is premised on what Martin-Trigona aptly characterizes as the “tortured procedural history” of this “bizarre case.” Martin-Tri-gona neglects to mention his responsibility for the peculiarities of this appeal. We consider herein only those arguments imbued with some arguable merit.
Martin-Trigona contends that the decision of Judge Daly is not a final judgment for purposes of appealability. He asserts that subsequent actions taken by the district court in connection with this case support his view.[9] This argument is merit-less. An order granting habeas corpus relief is final and subject to appellate review. 28 U.S.C. § 2253 (1976); see Craig v. Hecht, 263 U.S. 255, 276-77, 44 S.Ct. 103, 106-107, 68 L.Ed. 293 (1923).
Martin-Trigona next argues that a proper appeal was never taken from Judge Daly’s order. This claim is also groundless. Notice of appeal from the judgment granting Martin-Trigona’s petition for a writ of habeas corpus was filed on April 22, 1982. The notice was filed on behalf of the named defendant, Bankruptcy Judge Shiff, and was signed by “Irving H. Perlmutter/At-torney for the Defendant.” Mr. Perlmutter is the attorney for the trustee of the corporate estate. Martin-Trigona argues that Attorney Perlmutter is not Judge Shift’s attorney, that he filed the appeal without Judge Shift’s consent, and that as a consequence, no lawful appeal has been filed. We disagree. Although the trustees were not named parties in the district court, they did participate in those proceedings. In fact, the district court ordered both trustees, “being the real parities [sic] in interest,” to respond to Martin-Trigona’s application for habeas corpus relief.[10] Record at Doc. 16. Cf. Beery v. Turner, 680 F.2d 705, 713 (10th Cir.), cert. denied, - U.S. -, 103 S.Ct. 449, 74 L.Ed.2d 604 (1982) (district court did not err in designating the trustee in bankruptcy to act as plaintiff in hearing to determine the bankrupt’s status).
“The general rule is that one who was not a party of record before the trial court may not appeal that court’s judgment.” Washoe Tribe v. Greenley, 674 F.2d 816, 818 (9th Cir.1982). But there are situations where a nonparty is allowed to appeal if the trial court’s judgment has affected the nonparty’s interest. West v. Radio-Keith-Orpheum Corp., 70 F.2d 621, 623-24 (2d Cir.1934).
This Circuit’s decision in West is on point. There a corporate receiver petitioned the district court for an order approving modifications made to a corporate obligation. An unsecured creditor of the corporation who received notice of the petition appeared in the district court to object to the proposed order. After several hearings, the district court granted the order. The disgruntled creditor appealed even though he was not a party to the proceedings in the district court. Judge Learned Hand observed that “generally speaking no person, not a party to a suit, may appeal.” Id. at 623; see *386 Sperry Rand Corp. v. Bell Telephone Laboratories, Inc., 317 F.2d 491, 493 (2d Cir.1963); United States v. McFaddin Express, Inc., 310 F.2d 799, 801 (2d Cir.1962). Nevertheless, Judge Hand held that the creditor should be allowed to appeal because he was brought into the suit at the invitation of the court and because there was no doubt but that the court’s order affected his interests. West, 70 F.2d at 624.
Like the creditor in West, the trustees participated in the proceedings below by filing, at the direction of the court, responses to Martin-Trigona’s habeas corpus petition. It was clear to the district court, as it is to us, that the trustees are the real parties-in-interest. They have a legitimate interest in seeing to it that Martin-Trigona testifies to the location of certain assets, books, and records that are necessary to the administration of the estates. Because the trustees participated in the proceedings below and because their interests were affected by the district court’s order, we find that the trustees have standing to bring this appeal. S.E.C. v. Lincoln Thrift Association, 577 F.2d 600, 603 (9th Cir.1978).
There is another reason for permitting the trustees to pursue this appeal. Unlike the decisions cited by Martin-Trigona in which the equities of the case weighed against allowing non-parties to appeal, see Washoe Tribe v. Greenley, 674 F.2d at 818; United States v. Conforte, 643 F.2d 641, 643 (9th Cir.1981), the circumstances of this case strongly favor the trustees. After the district court ordered the trustees to respond to Martin-Trigona’s petition, all further proceedings were stayed, thereby denying the trustees the opportunity to file additional claims of law in opposition to the petition.[11] The stay remained in effect until April 19, 1982, when Judge Daly rendered his decision. Thus, after the trustees were compelled to join in the proceedings as the real parties-in-interest, the district court foreclosed any meaningful participation by them. Moreover, the stay imposed by the trial court made futile any effort by the trustees to intervene under Fed.R.Civ.P. 24(c). See S.E.C. v. Lincoln Thrift Association, 577 F.2d at 603. We view these circumstances as an additional compelling reason for the Court to entertain an appeal by the trustees.
We next consider Martin-Trigona’s claim that this appeal must be dismissed as moot. The mootness doctrine is grounded on the case or controversy requirement of Article III. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed. Martin-Trigona identifies the controversy in this case as centering on the power of the bankruptcy judge to imprison for civil contempt. In his view, this controversy no longer exists because Bankruptcy Judge Shiff has now recused himself from the case and because the bankruptcy court has, in response to Judge Daly’s order, certified the contemptuous conduct to the district court pursuant to Bankruptcy Rule 920(a)(4).
Martin-Trigona misstates the nature of the controversy. The dispute is not between Martin-Trigona and Judge Shiff; no relief is sought from Judge Shiff personally. The true controversy is between Martin-Trigona and the trustees, and it concerns Martin-Trigona’s persistent and deliberate refusal to testify in connection with the administration of his bankrupt personal and corporate estates. Judge Shiff’s decision to recuse himself from the underlying *387 bankruptcy cases clearly does not resolve the dispute between the trustees and Martin-Trigona.
More troublesome is the bankruptcy court’s certification of Martin-Trigona’s contemptuous conduct to the district court shortly after Judge Daly’s decision. Even this, however, does not moot the controversy because the relief granted by Judge Daly is not irreversible, as our disposition of this appeal demonstrates. Martin-Trigona is free solely because of Judge Daly’s decision; his present freedom is not guaranteed by the bankruptcy court’s certification. We view the certification as an attempt by the bankruptcy court to comply with Judge Daly’s ruling — a ruling contested by the trustees in this appeal. As to the trustees, the controversy remains. The dispute will not be resolved until Martin-Trigona purges himself of contempt. S.E.C. v. Radio Hill Mines Co., 479 F.2d 4, 7-8 (2d Cir.1973). The present appeal was properly submitted to this Court, is within our jurisdiction, and presents a justiciable controversy.
B. Propriety of Habeas Corpus Relief
Martin-Trigona chose to challenge the bankruptcy court’s order imprisoning him for civil contempt with a petition for a writ of habeas corpus. The district court appropriately viewed the petition as “an ill-suited vehicle for raising the question .... The better procedure might have been for petitioner to appeal the contempt order, but he has not done so.” 19 B.R. at 1001. Judge Daly’s decision, although recognizing the problem, did not cure the procedural infirmity. We hold that absent extraordinary circumstances, which are not present here, all available routes of appeal must be exhausted before a person imprisoned for civil contempt by a bankruptcy court can avail himself of habeas corpus relief.
Prior to the Reform Act, the district courts had “original jurisdiction, ... of all matters and proceedings in bankruptcy.” 28 U.S.C. § 1334 (1976), replaced by 28 U.S.C. § 1334 (Supp. II 1978). Under the new system created by the Reform Act, the district courts have appellate jurisdiction over bankruptcy court proceedings. Under 28 U.S.C. § 1334(a) (Supp. IV 1980), the district court has “jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.” The district court also has jurisdiction to entertain “appeals from interlocutory orders and decrees of bankruptcy courts” pursuant to 28 U.S.C. § 1334(b) (Supp. IV 1980), provided that an appeal from an interlocutory order or decree must be “by leave of the district court to which the appeal is taken.” See International Horizons, Inc. v. Committee Of Unsecured Creditors (In re International Horizons, Inc.), 689 F.2d 996, 999-1000 (11th Cir.1982).
An order of civil contempt is generally thought to be interlocutory and unreviewa-ble until a final judgment has been entered. International Business Machines Corp. v. United States, 493 F.2d 112, 114-15 & 117 (2d Cir.1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Consequently, most courts have held that the jurisdiction of the court entering an order of imprisonment for civil contempt could properly be challenged through a petition for a writ of habeas corpus. See Watkins v. Rives, 125 F.2d 33, 41 (D.C.Cir.1941) (“habeas corpus may properly be used to challenge jurisdiction of a court, it cannot be used to review inconsistencies or even errors of law committed by a court of competent jurisdiction”) (footnote omitted); United States ex rel. Emanuel v. Jaeger, 117 F.2d 483, 487 (2d Cir.1941) (“Relator has appealed from neither the commitment nor the contempt order; he therefore can raise here [on habe-as corpus] the issue of jurisdiction only.”); United States ex rel. Paleais v. Moore, 294 F. 852, 855 (2d Cir.1923) (“only matter which can now be considered [on habeas corpus] is the matter of the lower court’s jurisdiction at the time it made the order adjudging the relator in contempt”), cert. denied, 264 U.S. 581, 44 S.Ct. 331, 68 L.Ed. 860 (1924); United States ex rel. Birnbaum v. Henkel, 185 F. 553, 554 (2d Cir.1911) (“Habeas corpus, however, does not review the regularity of the order, but only the validity of the commitment.”).
*388 Although habeas corpus traditionally has been accepted as the proper vehicle to challenge the constitutionality of an order of imprisonment from which there is no route of appeal, Sunal v. Large, 332 U.S. 174, 183, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982 (1947); Ex parte Steiner, 202 F. 419, 421 (2d Cir.1913); Patterson v. Lumbard, 16 F.R.D. 140 (S.D.N.Y.1954), habeas corpus is not a substitute for an appeal, Craig v. Hecht, 263 U.S. 255, 277, 44 S.Ct. 103, 106, 68 L.Ed. 293 (1923).
This proceeds on the theory that the erroneous decision of a court which has a right to dispose of a controversy on the merits, as well as a decision where the court has no jurisdiction to dispose of the question at all may be corrected directly by appeal or writ of error. There is ordinarily no necessity for a writ of habe-as corpus.
Ex parte Steiner, 202 F. at 421. In United States ex rel. Sutton v. Mulcahy, 169 F.2d 94 (2d Cir.1948), cert. denied, 337 U.S. 956, 69 S.Ct. 1526, 93 L.Ed. 1755 (1949), the district court was forced to commit a recalcitrant witness for civil contempt. The con-temnor bypassed his right to appeal. Instead, he filed a writ of habeas corpus in the district court alleging that the court that entered the contempt order lacked jurisdiction. The district court dismissed the petition and this Court affirmed relying on the Supreme Court’s restrictive approach to appeals disguised as habeas corpus petitions.
[T]he situations in which habeas corpus has done service for an appeal are the exceptions. Thus where the jurisdiction of the federal court which tried the case is challenged or where the constitutionality of the federal statute under which conviction was had is attacked, habeas corpus is increasingly denied in case an appellate procedure was available for correction of the error.
Sunal v. Large, 332 U.S. 174, 179, 67 S.Ct. 1588, 1591, 91 L.Ed. 1982 (1947) (footnote omitted), quoted in United States ex rel. Sutton v. Mulcahy, 169 F.2d at 96; see also Henry v. Henkel, 235 U.S. 219, 228-29, 35 S.Ct. 54, 56-57, 59 L.Ed. 203 (1914).
We recognize and adhere to the general rule that the writ of habeas corpus is not a substitute for a regular route of appeal. The district court could have heard an appeal from the order imprisoning Martin-Trigona for civil contempt. See In re International Horizons, Inc., 689 F.2d at 1000. An appeal from an interlocutory order of the bankruptcy court is permitted with leave of the district court under 28 U.S.C. § 1334(b) (Supp. IV 1980). If Martin-Trigona questioned the jurisdiction of the bankruptcy court, he had a remedy, but that remedy was to seek leave to appeal, not to petition for a writ of habeas corpus. Cf. Maiorino v. Branford Savings Bank, 691 F.2d 89, 91 (2d Cir.1982). A habeas corpus petition is the avenue of last resort, always available to safeguard the fundamental rights of persons wrongly incarcerated. Ex parte Steiner, 202 F. 419, 421 (2d Cir.1913).
Where, as here, a regular route of appeal exists, habeas corpus will be allowed in only exceptional cases. See Adams v. United States ex rel. McCann, 317 U.S. 269, 274-75, 63 S.Ct. 236, 239-240, 87 L.Ed. 268 (1942) (habeas corpus appropriate for appeal on jurisdiction question where trial transcript unavailable for appeal on other grounds); Riggins v. United States, 199 U.S. 547, 548-49, 26 S.Ct. 147, 148-149, 50 L.Ed. 303 (1905) (“Ordinarily the writ will not be granted when there is a remedy by writ of error or appeal, yet in rare and exceptional cases it may be issued, although such remedy exists.”). In Walker v. Chitty, 112 F.2d 79 (9th Cir.1940), two criminals convicted in the federal district court and sentenced to imprisonment filed a petition for a writ of habeas corpus challenging, in part, the jurisdiction of the district court. Although an appeal from the judgments of conviction was available, the prisoners opted to seek the writ instead. The district court dismissed the petition and the court of appeals affirmed:
In the scheme of things, order requires that under the great majority of cases certain regular procedure be followed, to the end that the instruments provided *389 accomplish the greatest good for the greatest number. The normal method of reviewing a judgment of a court is by the prosecution of an appeal, and this is the course which must be followed save in rare and exceptional circumstances.
Id. at 82.
A similar situation is presented in the instant case. We understand that in rare circumstances a litigant may be unsure whether there is an open avenue of appeal. This is not such a case. If Martin-Trigona questioned the jurisdiction of the bankruptcy court, his first resort should have been to seek leave to appeal. See Warring v. Colpoys, 122 F.2d 642, 644-45 (D.C.Cir.), cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941). We recognize his pro se status and appreciate the problems inherent in occupying that position, but we will not stretch the rules to accommodate a person who, like Martin-Trigona, is a law school graduate and who has amply demonstrated his familiarity with the bankruptcy law and the rules of procedure. See Sunal v. Large, 332 U.S. 174, 177, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947) (“It cannot be said that absence of counsel made the appeals unavailable as a practical matter.”); note 1 supra. There are no special circumstances revealed by the record, other than those caused by Martin-Trigona’s own conduct, to justify a departure from regular procedure. Because Martin-Trigona filed a petition for a writ of habeas corpus without seeking leave to appeal, his petition should have been dismissed by the district court.[12]
CONCLUSION
The judgment of the district court is vacated. We remand this case to the district court to dismiss the petition for a writ of habeas corpus and for further proceedings on any certified matters. The mandate shall issue forthwith.

. Martin-Trigona is not your typical pro se advocate. The bankruptcy court noted that he is “a graduate of law school, [and has] demonstrated throughout several days of proceedings and innumerable motions, applications and briefs that he was knowledgeable in the bankruptcy field.” 16 B.R. at 793. Martin-Trigo-na’s name has appeared on the docket of nearly every district judge as well as bankruptcy judge in the District of Connecticut. The Seventh Circuit was faced with Martin-Trigona’s bad faith refusal to answer questions concerning his assets, Martin-Trigona v. Gouletas, 634 F.2d 354, 360 (7th Cir.) (per curiam), cert. denied, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980), and his motion to disqualify all the judges of the court of appeals. Id. at 355 n. 1; see also United States v. Martin-Trigona, 684 F.2d 485, 490 n. 6 (7th Cir.1982). We note that he has tried a similar tactic in the district court here.

. Although Martin-Trigona filed a notice of appeal from the transfer order, he failed to apply for a stay of the order pursuant to Bankruptcy Rule 805 and failed to seek leave to appeal the interlocutory transfer order pursuant to 28 U.S.C. § 1334(b) (Supp. II 1978). The appeals were assigned to the docket of Edward Weinfeld, X, under the numbers 81 Civ. 2628 & 6526.

. Bankruptcy Rule 205(a) provides:
ía) Examination on Application. Upon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

. At the time his bankruptcy cases were filed, Martin-Trigona was imprisoned in a federal correctional facility in Illinois on a 1980 mail fraud conviction. Bankruptcy Rule 913 empowers the bankruptcy judge to “issue a writ of habeas corpus when appropriate to bring a person before the court for examination or to testify.” See 28 U.S.C. § 2256 (Supp. II 1978).

. Bankruptcy Rule 920(a) sets forth guidelines governing contempt proceedings. It in effect superseded § 41(a) of the Bankruptcy Act of 1898 which governed the bankruptcy referee’s contempt powers. The Rule provides:
(a) Contempt Committed in Proceedings Before Referee.
(1) Summary Disposition by Referee. Misbehavior prohibited by § 41a(2) of the Act may be punished summarily by the referee as contempt if he saw or heard the conduct constituting the contempt and it was committed in his actual presence. The order of contempt shall recite the facts and shall be signed by the referee and entered of record.
*383 (2) Disposition by Referee upon Notice and Hearing. Any other conduct prohibited by § 41a of the Act may be punished by the referee only after hearing on notice. The notice shall be in writing and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged and whether the contempt is criminal or civil or both. The notice may be given on the referee’s own initiative or on motion by a party, by the United States attorney, or by an attorney appointed by the referee for that purpose. If the contempt charged involves disrespect to or criticism of the referee, he is disqualified from presiding at the hearing except with the consent of the person charged.
(3) Limits on Punishment by Referee. A referee shall not order imprisonment nor impose a fine of more than $250 as punishment for any contempt, civil or criminal.
(4) Certification to District Judge. If it appears to a referee that conduct prohibited by § 41a of the Act may warrant punishment by imprisonment or by a fine of more than $250, he may certify the facts to the district judge. On such certification the judge shall proceed as for a contempt not committed in his presence.

.Soon after his habeas corpus petition was filed, the United States Court of Appeals for the Seventh Circuit ordered Martin-Trigona released from custody pending appeal of his mail fraud convictions. See note 4 supra. At that point, Judge Shiffs civil contempt order was the sole reason for Martin-Trigona’s continued confinement. Martin-Trigona ultimately succeeded in having his mail fraud convictions reversed and the case remanded on the grounds that he was denied representation of counsel at trial. United States v. Martin-Trigona, 684 F.2d 485, 487 (7th Cir.1982).

. The United States Attorney’s Office took no position with regard to Martin-Trigona’s habe-as corpus petition because, pursuant to directives of the Attorney General:
[T]he Justice Department may not represent a judicial officer in a civil proceeding which is in the nature of an appeal to overturn a decision of the officer rendered in favor of one of the private litigants. The reason for such a determination is that no relief, monetary or otherwise, is sought against the judicial officer in his personal capacity. The United States is not a party to the civil action and the party in whose favor the decision is made is the real party in interest.
Record at Doc. 4.

. The Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, replaced the aged Bankruptcy Act of 1898 with a comprehensive and uniform set of substantive and procedural law governing bankruptcies throughout the United States. The Reform Act established for each federal judicial district a United States Bankruptcy Court, 28 U.S.C. § 151(a) (Supp. IV 1980), and empowered that court to exercise jurisdiction over a wider range of cases than formerly allowed under the referee system, 28 U.S.C. § 1471(b) (Supp. IV 1980). Judges of the bankruptcy courts now wield all “the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.” 28 U.S.C. § 1481 (Supp. IV 1980).
*384 Under section 41 of the Bankruptcy Act of 1898, bankruptcy referees could not order imprisonment for civil contempt. Under Bankruptcy Rule 920(a)(3), which supplanted section 41, the referee was empowered to impose sanctions for civil contempt except that he could not order imprisonment or impose a fine in excess of $250. These sanctions could be imposed only by the district court on certification from the referee under Bankruptcy Rule 920(a)(4). The Reform Act repealed the 1898 Act, § 401(a), 92 Stat. 2682, but left intact the Bankruptcy Rules to the extent they did not conflict with the Reform Act and until they were repealed or superseded, § 405(d), 92 Stat. 2685. The old referee system was replaced with a nationwide network of bankruptcy courts staffed with non-Article III judges. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., - U.S. -, -, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982). Section 241(a) of the Reform Act conferred on the newly-established courts all “the powers of a court of equity, law, and admiralty.” 28 U.S.C. § 1481 (Supp. IV 1980).
Judge Daly recognized that “the powers of a court of equity, law and admiralty” include the power to order imprisonment for civil contempt. 19 B.R. at 1002; see 28 U.S.C. § 1826 (1976). He also recognized the obvious conflict between the powers conferred on the bankruptcy courts by section 241(a) of the Reform Act, 28 U.S.C. § 1481 (Supp. IV 1980), and the limitations on contempt power imposed by Bankruptcy Rule 920(a)(3). He resolved the conflict in favor of the latter.
Although the Reform Act declares that its provisions prevail over any inconsistent rules under the prior act, § 405(d), 92 Stat. 2685, Judge Daly discounted this indefinite command because he “doubt[ed] that Congress’ general grant of power in § 1481 [was] sufficiently specific to increase so dramatically the scope of contempt powers from what they were when Rule 920 was unchallenged by § 1481.” 19 B.R. at 1002. He concluded that Rule 920 could not be discarded absent a “clear statement of intent from Congress” to abrogate the Rule. He could not find one.
The entire statutory scheme of the Reform Act has been shaken by the Supreme Court’s decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., - U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Court in Northern Pipeline ruled unconstitutional at least that part of the jurisdictional section of the Reform Act, § 241(a), 92 Stat. 2668, which granted the bankruptcy courts original jurisdiction over all “civil proceedings arising under title 11 or arising in or related to cases under title 11.” 28 U.S.C. § 1471(b) (Supp. IV 1980). In the Court’s opinion, “Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws.” - U.S. at -, 102 S.Ct. at 2874. The Court stayed its judgment until October 4, 1982, and later stayed it again through December 24, 1982, to allow Congress time to remedy the deficiencies in the Reform Act. To date, Congress has not acted.
While this case involves a different provision of § 241(a) of the Reform Act (28 U.S.C. § 1481) than that at issue in Northern Pipeline (28 U.S.C. § 1471(a)), the broad language of the Court’s opinion raises doubts as to the constitutionality of 28 U.S.C. § 1481 (Supp. IV 1980). See Lindsey v. Cryts, 24 B.R. 930 (D.C.E.D.Ark.1982) (non-Art. Ill courts cannot constitutionally be vested with full power to sanction civil contempt). However, we agree with the conclusion of the United States Court of Appeals for the District of Columbia Circuit: when the Supreme Court stated that its decision would “apply only prospectively,” - U.S. at -, 102 S.Ct. at 2879, it intended the decision not to “affect bankruptcy court decisions pending on appeal before June 28, 1982, the date of the Supreme Court opinion.” Barnes v. Whelan, 689 F.2d 193, 196 n. 1 (D.C.Cir.1982). Martin-Trigona’s habeas corpus petition, which called into question the correct interpretation of 28 U.S.C. § 1481, was filed on January 29, 1982, well before Northern Pipeline was handed down.

. There have been no further proceedings taken by Judge Daly in connection with this case. Martin-Trigona mistakenly characterizes orders pertaining to the underlying bankruptcy proceedings and appeals therefrom as “further proceedings” in connection with this habeas corpus action.

. We are not persuaded that Bankruptcy Rule 920(a)(2) affects the trustees’ right to appeal. Contemptuous behavior is punishable under Bankruptcy Rule 920(a)(2) after hearing on notice by the bankruptcy referee, by the United States Attorney, or by an attorney appointed by the referee for that purpose. The trustees are none of the above. But this case is not a contempt proceeding for that purpose. We are not asked to consider in this appeal whether Martin-Trigona’s conduct in the bankruptcy court was contemptuous. We are asked whether the bankruptcy judge was empowered to order imprisonment for civil contempt. We find no indication in the Bankruptcy Rules that the restrictions of Rule 920(a)(2) apply to this case. We do find support for the trustees’ right to appeal Judge Daly’s decision. Bankruptcy Rule 610 provides:
The trustee or receiver may, with or without court approval, prosecute or enter his appearance, and defend any pending action or proceeding by or against the bankrupt, or commence and prosecute any action or proceeding in behalf of the estate, before any tribunal.

. Several days after responses were filed to Martin-Trigona’s habeas corpus petition by the trustees and the United States Attorney’s Office, Judge Daly learned of a lawsuit that had been filed by Martin-Trigona naming all judges of the district court in the District of Connecticut as defendants. Martin-Trigona v. Clarie, No. 82-158 (D.Conn. filed Apr. 2, 1982). Accordingly, Judge Daly issued an order staying further proceedings on the habeas corpus petition until the claims in No. 82-158 were resolved. Record at Doc. 19. When it became apparent to Judge Daly that proper service of the complaint in No. 82-158 had not been made, he proceeded to enter his decision on the habeas corpus petition because “the better course now appears to be to decide the issue presented, and allow the parties their rights of appeal.” 19 B.R. at 1002.

. Our ruling is not as strict as that requiring state prisoners to exhaust all available state remedies before habeas corpus relief can be had from the federal courts, although our holding is bom of similar concerns. See Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947); Riggins v. United States, 199 U.S. 547, 549-50, 26 S.Ct. 147, 148-149, 50 L.Ed. 303 (1905). The orderly administration of justice requires regularity of procedure. See In re Chapman, 156 U.S. 211, 218, 15 S.Ct. 331, 333, 39 L.Ed. 401 (1895). And it is the court’s function to enforce the rules designed to ensure regularity and reliability.