09-5068-cv
Goodearth Maritime Ltd. v. Calder Seacarrier Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 14ᵗʰ day of July, two thousand ten.

PRESENT:   REENA RAGGI,
           GERARD E. LYNCH,
           DENNY CHIN,
                   *Circuit Judges*.

------------------------------------------------------------------------------------

GOODEARTH MARITIME LTD.,

                   *Plaintiff*,

BAJA FERRIES USA LLC,

                   *Claimant-Appellant*,

                   v.                                    No. 09-5068-cv

CALDER SEACARRIER CORP., also known as
Calder Sea Carrier Corp., ROLSTON ENTERPRISES,
LTD.,

                   *Defendants*,

FENBY COMPANY LIMITED, also known as Fenby
Co. Ltd.,

                   *Defendant-Appellee*.

------------------------------------------------------------------------------------

APPEARING FOR APPELLANT:        JAMES P. RAU, Cardillo & Corbett, New York,
                                New York.

APPEARING FOR APPELLEE:          GARTH S. WOLFSON, Mahoney & Keane, LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's December 7, 2009 order is VACATED, and the case is REMANDED.

On or about June 20, 2008, Fenby Company Ltd. ("Fenby") remitted a $1,398,750.00 freight payment to Baja Ferries USA LLC ("Baja"). Baja did not, however, receive $482,775.72 of that sum because, while the electronic funds transfer ("EFT") was passing through an intermediary bank in New York, Goodearth Maritime Limited successfully moved for attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure (the "Admiralty Rules"). See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 278 (2d Cir. 2002). After we overruled Winter Storm's holding that an EFT being processed by an intermediary bank was attachable property under Rule B, see Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 72 (2d Cir. 2009); see also Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 (2d Cir. 2009) (applying Shipping Corp. of India rule retroactively to cases open on direct review), the district court vacated the attachment and subsequently ordered the funds released to Fenby. Baja now appeals from the latter order, contending that the funds should have been released

2

to it instead. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

1.    Jurisdiction

Preliminarily, Fenby asserts that we lack jurisdiction to hear Baja's appeal because Baja never intervened as a party in the district court but, rather, challenged the attachment under Admiralty Rule E(4)(f) as a "person claiming an interest" in attached property. While generally only parties of record in the district court have standing to appeal its judgment, see generally Marino v. Ortiz, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled."), we recognize "an exception to this rule when 'the nonparty has an interest that is affected by the trial court's judgment,'" Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 127 (2d Cir. 2009) (quoting Hispanic Soc'y of N.Y. City Police Dep't v. N.Y. City Police Dep't, 806 F.2d 1147, 1152 (2d Cir. 1986)) (permitting nonparty to appeal district court orders attaching funds it administered); see also West v. Radio-Keith-Orpheum Corp., 70 F.2d 621, 624 (2d Cir. 1934) (L. Hand, J.) (observing that where "decree affects [person's] interests, he is often allowed to appeal"). This exception applies here because Baja claims an interest in the very funds the district court ordered released to Fenby. Accordingly, we conclude that Baja has standing to appeal even though it never formally became a party in the district court. See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC, 467 F.3d 73, 77-79 (2d Cir. 2006) (permitting nonparty to appeal

3

where it had "plausible" interest affected by district court's judgment); cf. Devlin v. Scardelletti, 536 U.S. 1, 7 (2002) (considering "whether petitioner should be considered a 'party' for the purposes of appealing" approval of class action settlement and noting that "[w]e have never . . . restricted the right to appeal to named parties to the litigation").

2.    Release of Attached Funds

Baja submits that the district court erred by releasing the attached funds to Fenby, the originator of the EFT, rather than to it, the beneficiary. "When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights." Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d at 70. The question of who is entitled to the wrongly attached funds is difficult because, as we explained in Shipping Corp. of India, "EFTs in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law." Id. at 71; see also id. at 71 n.13 ("If it is argued that property rights must vest in some entity at all times, then perhaps New York law envisages EFTs as the property of the intermediary bank for the short while or instant during which they remain in the bank's possession.").

Fenby asserts that it is entitled to the funds under N.Y. U.C.C. § 4-A-402, which excuses a sender's payment obligation if the funds transfer is not completed by acceptance of the beneficiary's bank. This argument fails for two reasons. First, the record does not support Fenby's contention that this EFT was not completed because it was "cancelled by operation of law," id. § 4-A-211(4), and "[a] cancelled payment order cannot be accepted,"

4

id. § 4-A-211(5). To the contrary, most of the funds originally sent by Fenby – $915,974.28 – have already been transferred to Baja's bank. As to the remaining funds, we think that Baja is correct that the attachment only interrupted the transfer, and did not cancel it.

Second, Fenby could not receive the funds directly from the Bank of New York. As we explained in Grain Traders, Inc. v. Citibank N.A., § 4-A-402 "incorporat[es] a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." 160 F.3d 97, 101 (2d Cir. 1998). In other words, even if payment were excused here, § 4-A-402 provides no support for Fenby's argument that it could receive the funds directly from the Bank of New York, rather than from its bank, Piraeus Bank SA. See id. at 100-02; see also N.Y. U.C.C. § 4-A-402 cmt. 2 ("The money-back guarantee is particularly important to Originator if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A. In that case Bank A must refund payment to Originator, and Bank A has the burden of obtaining refund from the intermediary bank that it paid.").

Relying on Bank of New York v. Norilsk Nickel, 14 A.D.3d 140, 789 N.Y.S.2d 95 (1st Dep't 2004), and European American Bank v. Bank of Nova Scotia, 12 A.D.3d 189, 784 N.Y.S.2d 99 (1st Dep't 2004), Baja submits that when the attachment was vacated, the EFT should have proceeded as if it had never been attached. Like this case, Norilsk Nickel and European American Bank involved EFTs that were attached at intermediary banks. In Norilsk Nickel, General Export Ltd. ("Genex") originated an EFT by giving payment orders

5

to its bank to transfer $2.5 million to Norilsk. Genex's bank accepted the payment order and sent payment orders to an intermediary bank, which froze the funds pursuant to federal law authorizing the freezing of funds transfers related to Yugoslavia. When hostilities with Yugoslavia ended ten years later, the First Department reasoned that "federal law unblocked the funds[, and] the UCC then required that the funds be transferred to the rightful owner, Norilsk." 14 A.D.3d at 147, 789 N.Y.S.2d at 100-01; see also id. at 145-46, 789 N.Y.S.2d at 99 (citing N.Y. U.C.C. §§ 4-A-502(4) and 4-A-503 in holding that title to funds had passed from originator). Likewise, in European American Bank, the First Department affirmed a decision releasing illegally attached funds at an intermediary bank and ordered that the contemplated transfer from the intermediary bank to the beneficiary's bank be completed. See 12 A.D.3d at 190, 784 N.Y.S.2d at 101 (citing N.Y. U.C.C. § 4-A-502).

Fenby points out that, in these cases, the originators apparently did not dispute where the money should go when the freeze of assets was lifted. Nonetheless, these cases lend support to Baja's argument that New York law does not require that funds be returned to the originator following a freeze of assets, even for an extended period of time, and that, in fact, the frozen funds may rightfully go to the beneficiary. Given that New York law apparently does not require the return of funds to the originator, and that the equities in this case – where the funds would have been transferred to Baja long ago were it not for our erroneous decision in Winter Storm, where Baja has not otherwise been paid, and where the record contains no

6

evidence of a legitimate competing claim for the funds from another party – favor releasing the funds to the beneficiary, we conclude that the funds should be released to Baja.[1]

We have considered Fenby's other arguments on appeal and conclude that they are without merit.  Accordingly, we VACATE the district court's December 7, 2009 order and REMAND with instructions that it enter an order directing the Bank of New York to proceed with the funds transfer as originally intended.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[1] While Fenby argues that we may not account for equitable considerations in deciding this case, the case law it relies on to support its argument stands only for the proposition that we may not look to equity to reach an outcome that would be inconsistent with New York law or our holdings in Shipping Corp. of India and Hawknet.  Cf., e.g., Regatos v. N. Fork Bank, 396 F.3d 493, 495 (2d Cir. 2005) ("Section 4-A-102 specifically provides that 'resort to principles of law or equity outside of Article 4-A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.'").  As explained above, however, our decision today is not inconsistent with either New York or federal law.