

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-20-2002

# Chadwick v. Janecka

Precedential or Non-Precedential: Precedential

Docket No. 02-1173

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Chadwick v. Janecka" (2002). *2002 Decisions.* Paper 520.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/520

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 20, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1173

H. BEATTY CHADWICK

v.

JAMES JANECKA, WARDEN, DELAWARE COUNTY
PRISON; THE DISTRICT ATTORNEY OF THE COUNTY OF
DELAWARE; THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA

v.

BARBARA JEAN CROWTHER CHADWICK,
        (Intervenor in District Court)

BARBARA JEAN CROWTHER CHADWICK,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

District Court Judge: Honorable Norma L. Shapiro
(D.C. No. 00-cv-01130)

Argued: May 24, 2002

Before: ALITO, MCKEE, and WALLACE,*
Circuit Judges

(Opinion Filed: August 20, 2002)

_____

* The Honorable J. Clifford Wallace, Senior Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.


        ALBERT MOMJIAN
        NANCY WINKELMAN (Argued)
        KEVIN C. McCULLOUGH
        STEPHEN A. FOGDALL
        Schnader Harrison Segal &
         Lewis, L.L.P.
        1735 Market Street, Suite 3800
        Philadelphia, PA 19103

        Counsel for Appellants

        THOMAS S. NEUBERGER (Argued)
        Thomas S. Neuberger, P.A.

2 East Seventh Street, Suite 302
Wilmington, DE 19801

ANNA M. DURBIN
PETER GOLDBERGER
50 Rittenhouse Place
Ardmore, PA 19003

Co-Counsel for Appellee

D. MICHAEL FISHER
WILLIAM H. RYAN, JR.
ROBERT A. GRACI
AMY ZAPP
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

Counsel for Amicus Curiae
Pennsylvania Office of Attorney
General

OPINION OF THE COURT

ALITO, Circuit Judge:

This appeal was taken from an order granting a petition for a writ of habeas corpus filed by Mr. H. Beatty Chadwick under 28 U.S.C. S 2254. The petitioner has applied eight times to the courts of Pennsylvania and six times to the federal district court for release from incarceration for civil

2

contempt for refusing to comply with an order in a matrimonial proceeding directing him to pay over $2.5 million into an escrow account. In the present case, the District Court concluded that the petitioner had exhausted state remedies even though he had not applied to the Pennsylvania Supreme Court for review of the adverse decision of the Superior Court. In the view of the District Court, it was sufficient that the petitioner subsequently submitted a habeas petition to the Pennsylvania Supreme Court in its original jurisdiction pursuant to 42 Pa. Cons. Stat. S 721. With respect to the merits of the present proceeding, the District Court accepted the state courts' repeated findings that the petitioner is able  to comply with the order directing him to pay the funds into escrow, but the District Court nevertheless held that the length of petitioner's confinement -- then almost seven years -- meant that the contempt order had lost its coercive effect and that confinement for civil contempt was no longer constitutional. We reverse.

I.

In November 1992, Mrs. Barbara Chadwick filed for divorce in the Delaware County (Pennsylvania) Court of Common Pleas. During an equitable distribution conference

in February 1993, Mr. Chadwick informed the state court and Mrs. Chadwick that he had unilaterally transferred $2,502,000.00 of the marital estate to satisfy an alleged debt to Maison Blanche, Ltd., a Gibraltar partnership.

It was later discovered that (1) one of the principals of Maison Blanche had returned $869,106.00 from Gibraltar to an American bank account in Mr. Chadwick's name and that these funds had then been used to purchase three insurance annuity contracts; (2) $995,726.41 had been transferred to a Union Bank account in Switzerland in Mr. Chadwick's name; and (3) $550,000.00 in stock certificates that the petitioner claimed he had transferred to an unknown barrister in England to forward to Maison Blanche had never been received. The state court then entered a freeze order on the marital assets on April 29, 1994.

In May 1994, Mr. Chadwick redeemed the annuity contracts and deposited the funds in a Panamanian bank. After a hearing on July 22, 1994, the court determined that Mr. Chadwick's transfer of the money was an attempt to defraud Mrs. Chadwick and the court. At that time, the court ordered petitioner to return the $2,502,000.00 to an account under the jurisdiction of the court, to pay $75,000.00 for Mrs. Chadwick's attorney's fees and costs, to surrender his passport, and to remain within the jurisdiction. Mr. Chadwick refused to comply, and Mrs. Chadwick thereafter filed a petition to have him held in civil contempt. Mr. Chadwick failed to appear at any of the three contempt hearings, but his attorney was present. The court found Mr. Chadwick in contempt of the July 22, 1994 order and issued a bench warrant for his arrest.

After learning of the bench warrant, Mr. Chadwick fled the jurisdiction but was arrested and detained on April 5, 1995. The state court determined that Mr. Chadwick had the present ability to comply with the terms of the July 22, 1994 order and set bail at $3,000,000. Mr. Chadwick could have been released from custody either by posting bail or by complying with the July 22, 1994 order. To date, he has done neither.

Since his confinement, Mr. Chadwick has applied eight times to the state courts[1] and six times to the federal court[2]

---

1. The state petitions include: (1) an emergency petition for release, which was denied by the Court of Common Pleas and affirmed by the Superior Court; (2) six state habeas petitions, all of which were denied; and (3) a petition for release from imprisonment or, in the alternative, house arrest, which was denied. See Appellant's Br. at 8-12.
2. The federal petitions include: (1) an emergency motion for injunctive relief pursuant to 42 U.S.C. S 1983, which was denied because abstention was appropriate under the doctrine of Younger v. Harris, 401 U.S. 37 (1971); (2) an emergency motion pursuant to 42 U.S.C. S 1983, which was denied, or, in the alternative, habeas corpus under 28 U.S.C.

S 2241, which was dismissed for failure to exhaust state remedies; (3) a third federal habeas petition, which was denied for failure to exhaust state remedies; (4) a petition for reconsideration of the dismissal of the third federal habeas petition, which was also denied for failure to exhaust state remedies; (5) a fourth federal habeas petition, which was also denied for failure to exhaust state remedies; and (6) a fifth federal habeas petition, which is the basis of this appeal. See Appellant's br. at 12-13.

4

to gain release from incarceration. After the trial court denied his sixth state habeas petition, the Superior Court affirmed the decision on April 23, 1997, stating:

> Instantly, appellant cites to the fact that he has been incarcerated since April 5, 1995. He claims the length of his incarceration, his age, poor health, inability to pursue his career and repeated hearings where he has refused compliance suggests that there is no possibility that he will comply with the order. Appellant admits that no court in this jurisdiction has adopted this test and we will not do so here. While it seems reasonable that at some point a temporal benchmark should be adopted to determine when contempt incarceration becomes impermissibly punitive we think that it is for our high court to make such a determination.

Magistrate Report & Recommendation at 12; App. at 39. Despite the Superior Court's invitation that the petitioner ask the Pennsylvania Supreme Court to decide the point at which incarceration for contempt becomes punitive, the petitioner did not file an allocatur petition in the state supreme court.

Later, on July 18, 1997, petitioner filed another petition for federal habeas relief, which was dismissed for failure to exhaust state court remedies. The District Court wrote:

> Although Mr. Chadwick has forfeited his right to seek Supreme Court review of the Superior Court's April 23, 1997 denial of his sixth state habeas petition, see Pa.R.App.P. 1113(a) (petition for allowance of appeal must be filed within 30 days of order), he would not be barred from filing a seventh state habeas petition based on his present confinement of approximately thirty-seven months. Under Pennsylvania law, Mr. Chadwick can file a seventh state habeas petition in the Court of Common Pleas and exhaust his appellate remedies[,] see 42 Pa. Cons. Stat. Ann. 931, or petition directly in the Supreme Court, which has original jurisdiction over habeas corpus proceedings. See 42 Pa. Cons. Stat. Ann. S 721(1). But unless the issues presented in the federal habeas petition have all been first presented to the Supreme Court, the district court

5

> may not exercise jurisdiction. See Lambert, 134 F.3d at 515 (requiring "complete exhaustion"); Swanger, 750 F.2d at 295 (raising claim before Supreme Court in petition for allowance of appeal satisfies exhaustion requirement).

Magistrate Report & Recommendation at 17; App. at 44 (emphasis added). Because Mr. Chadwick had not sought review in the Pennsylvania Supreme Court on the issue presented in his federal petition, that petition was dismissed.

In September 1999, Mr. Chadwick filed a pro se Application for Leave to File Original Process (his seventh state habeas action) with the Pennsylvania Supreme Court. Mrs. Chadwick sought permission to intervene, and opposed the application and the state habeas petition. In a per curiam order dated February 8, 2000, the Pennsylvania Supreme Court granted the request to file original process and the request to file an answer, and denied the petition for habeas corpus.

On March 2, 2000, Mr. Chadwick filed the instant petition for federal habeas relief. The District Court granted that petition on January 3, 2002, but stayed its order for 30 days to "allow appeal and application for further stay of this court's order to the appellate court." App. at 25. Mrs. Chadwick took this timely appeal. By order dated January 31, 2002, we granted Mrs. Chadwick's motion for a stay pending appeal. The United States Supreme Court thereafter denied Mr. Chadwick's Application for Enlargement and to Vacate Stay.

II.

A.

The first issue we must address is whether Mrs. Chadwick has standing to proceed on appeal. Mr. Chadwick argues that because Mrs. Chadwick was an intervenor in the District Court, she lacks Article III standing. He further argues that, because the respondents -- the warden, the Delaware County District Attorney, and the Attorney

6

General of the Commonwealth -- did not appeal, we do not have jurisdiction to entertain this appeal.

The United States Supreme Court has stated that"an intervenor's right to continue a suit in the absence of the party on whose side the intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art[icle] III." Diamond v. Charles, 476 U.S. 54, 68 (1986). Under Article III of the United States Constitution, the judicial power extends only to"Cases" and "Controversies." As noted in Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000):

a plaintiff must meet three requirements in order to establish Article III standing. See, e.g., Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. , 528 U.S. 167, 180-181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). First, he must demonstrate "injury in fact" -- a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (internal quotation marks and citation omitted). Second, he must establish causation -- a "fairly . . . trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant. Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). And third, he must demonstrate redressability -- a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. Id., at 45, 96 S.Ct. 1917.

See also, e.g., Valley Forge Christian College v. Americans United For Separation of Church & State, 454 U.S. 464, 472 (1982); In re Grand Jury, 111 F.3d 1066, 1071 (3d Cir. 1997).

We have little difficulty concluding that Mrs. Chadwick meets all of these requirements here. First, Mrs. Chadwick clearly has suffered and continues to suffer an injury in fact that is both "concrete" and "actual," "not conjectural or hypothetical." Mr. Chadwick has placed a substantial sum of money beyond the reach of the state court before whom the matrimonial case is pending. If the decision of the

7

District Court is affirmed, Mr. Chadwick will be released from jail and will be relieved of the pressure to return this money for equitable distribution. Second, Mrs. Chadwick's injury is unquestionably traceable to Mr. Chadwick's refusal to comply with the state court order under which he is being held. The District Court's order would erase the effect of the state court order requiring the return of the funds and would significantly reduce Mrs. Chadwick's share of the marital estate. Third, Mrs. Chadwick's injury may be redressed by a favorable decision here. A reversal of the District Court's order granting Mr. Chadwick's petition would require him to remain in prison until he returns the $2.5 million to the state court for later distribution.

In arguing that Mrs. Chadwick lacks standing, the petitioner relies principally on Diamond v. Charles, 476 U.S. 54 (1986), but that case is easily distinguishable. The Diamond case involved a constitutional attack on an Illinois statute restricting abortions. Id. at 56. Diamond, a pediatrician, successfully moved to intervene in the District Court, based on his conscientious objection to abortion and his status as a pediatrician and the father of a minor daughter. Id. at 66. When the District Court permanently enjoined provisions of the statute and the Court of Appeals affirmed, the State of Illinois did not appeal to the Supreme

Court, but Diamond did. Id. at 62-63. The Court held that Diamond could not maintain the appeal as the sole appellant because he lacked Article III standing. Id. at 64-71. Noting that Illinois, by not appealing, had accepted the decision that its statute was unconstitutional, the Court observed that even if it upheld the statute, Diamond, a private citizen, could not compel the state to enforce it. Id. at 64-65. In addition, the Court explained, Diamond could not establish that he had or would suffer injury in fact. Id. at 65-71. Diamond argued that if the statute were upheld, there would be fewer abortions and greater demand for his services as a pediatrician, but the Court dismissed this argument as speculative. Id. at 66. The Court likewise rejected Diamond's contention that he had standing because of his interest in the standards of medical practice relating to abortion. Id. at 66-67. The Court stated that Diamond's abstract interest in the issue of abortion could not substitute for the concrete injury demanded by Article

8

III. Id. In response to Diamond's claim of standing as the father of a minor daughter, the Court noted that the validity of the parental notification provision of the statute was not at issue in the appeal and Diamond had not provided factual support to show that the provisions that were at issue threatened him with any concrete injury. Id. at 67. Finally, the Court held that Diamond could not assert any constitutional rights of unborn fetuses and that the award of fees against him in the District Court could not "fairly be traced to the Illinois Abortion Law." Id. at 70.

Other than the fact that Diamond and Mrs. Chadwick are both intervenors, the two cases have little in common. Mrs. Chadwick, as noted, has a direct financial interest: she wants Mr. Chadwick to produce a very substantial sum of money in which she claims a share. By contrast, Diamond's claim that upholding the Illinois law would result in more live births and thus increase his income as a pediatrician was highly speculative and an obvious makeweight. Diamond was a classic case of an attempt to litigate an abstract legal issue; the present case involves a concrete monetary interest.

Mr. Chadwick argues, however, that Mrs. Chadwick has no concrete injury at stake because "even if she were somehow to secure a reversal of the district court's order, the respondents would still be required to release Mr. Chadwick, because they did not appeal." Appellee's Br. at 21. We reject this highly technical argument and find Martin-Trigona v. Shiff, 702 F.2d 380 (2d Cir. 1983), instructive on the question whether someone other than the legal custodian of a prisoner may appeal an adverse decision in a habeas proceeding. In Martin-Trigona, a bankruptcy judge ordered a debtor imprisoned for civil contempt when he refused to submit to examination by the trustees. Id. at 381. The debtor filed a petition for a writ of habeas corpus, the District Court granted the motion, and the trustees appealed. Id. The Second Circuit held that the

trustees were the real parties in interest because"[t]hey ha[d] a legitimate interest in seeing to it that Martin-Trigona testifie[d] to the location of certain assets, books, and records that are necessary to the administration of the estates." Id. at 386. Because the trustees' interests were

sufficiently affected by the District Court's order, the Second Circuit held that the trustees had standing to appeal even though they were not the custodian of the debtor. Cf. United States ex rel. Thom v. Jenkins, 760 F.2d 736 (7th Cir. 1985) (private party who prosecuted contempt proceedings against judgment debtor was respondent and appellee on appeal of debtor's habeas petition following jailing for contempt). Martin-Trigona is analogous to the case at bar because Mrs. Chadwick -- like the trustees -- is the party who has "a legitimate interest in seeing to it," 702 F.2d at 386, that Mr. Chadwick returns a substantial portion of the marital estate to the court. We find the decision in Martin-Trigona to be persuasive.

The only case cited by Mr. Chadwick in support of his position is far afield. In Carter v. Rafferty , 826 F.2d 1299, 1303-04 (3d Cir. 1987), the District Court granted habeas petitions filed by two prisoners who had been tried and convicted together in state court. The habeas respondents appealed, but their notice of appeal "specifically limited itself to the order releasing [one of the prisoners]." Id. at 1303. Noting that what was then Rule 3(c) of the Federal Rules of Appellate Procedure3 required that a notice of appeal "designate the judgment, order, or part thereof appealed from," the Court held that it lacked jurisdiction to consider the portion of the District Court's judgment relating to the other prisoner because the appellants had failed to specify that they were appealing that part of the judgment. Id. at 1304. Thus, Carter does not stand for the proposition that only the person with the keys to the jail has standing to appeal an order granting a writ of habeas corpus. Rather, Carter holds that only the portions of an order specified in a notice of appeal may be challenged in the appeal. We accordingly hold that Mrs. Chadwick has Article III standing to pursue the present appeal. We have considered all of Mr. Chadwick's standing arguments, and we find them to be devoid of merit.

_____

3. See current Fed. R. App. Proc. 3(c)(1)(B).

III.

Mrs. Chadwick argues that Mr. Chadwick did not exhaust all available state court remedies before presenting his claims to the federal court in his habeas petition. See 28 U.S.C. S 2254(b)(1). Mrs. Chadwick makes two exhaustion arguments. First, she argues that Mr. Chadwick

did not fairly present to the Pennsylvania Supreme Court the same claims that he raised in his federal habeas petition. See Picard v. Connor, 404 U.S. 270, 275-76 (1971). Specifically, Mrs. Chadwick urges reversal because the period of confinement listed in Mr. Chadwick's application for leave to file original process before the Pennsylvania Supreme Court -- "over 50 months" (i.e., four years and two months) -- and the period of confinement for which the District Court granted habeas -- "nearly seven years" -- are not the same. Second, Mrs. Chadwick argues that Mr. Chadwick's application for leave to file original process did not fairly present the claims to the Pennsylvania Supreme Court where, although it has original jurisdiction in habeas matters,[4] the Pennsylvania Supreme Court will ordinarily refer habeas petitions to the appropriate lower court, unless there exists "imperative necessity or apparent reason why expedition is desirable or required." See Commonwealth ex rel. Paylor v. Claudy, 366 Pa. 282, 287 (1951).

Although Mrs. Chadwick would have us decide the question of exhaustion, we decline to do so here because, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (enacted April 24, 1996), we may deny a habeas petition on the merits even though state remedies may not have been exhausted. See 28 U.S.C. S 2254(b)(2); see also Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 33 (3d Cir. 1965); In re Ernst's Petition, 294 F.2d 556, 561-62 (3d Cir. 1961).

_____

4. The Pennsylvania statutes state that "[t]he Supreme Court shall have original but not exclusive jurisdiction of all cases of . . . Habeas corpus." 42 Pa. Cons. Stat. S 721.

11

IV.

A.

Turning to the merits, we must first address the proper scope of review in this case. The parties dispute whether the AEDPA standard of review, see 28 U.S.C.S 2254(d), applies here.[5] Relying on Appel v. Horn, 250 F.3d 203, 209-12 (3d Cir. 2001), Mr. Chadwick argues that 28 U.S.C. S 2254(d) does not apply because the state courts never adjudicated his claims on the merits. As evidence, he points to the fact that the Pennsylvania Supreme Court, after accepting the original habeas corpus petition for adjudication on its merits, denied relief without discussion. He also argues that Everett v. Beard, 290 F.3d 500, 508 (3d Cir. 2002), reaffirms that the AEDPA standard does not apply "unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States." Consequently, he advocates that we review de novo the federal constitutional question rather than merely evaluate

whether the state courts' rulings were "reasonable."

Mrs. Chadwick responds that the Pennsylvania Supreme
Court summarily denied his petition on the merits6 and that

---

5. We review de novo the District Court's legal conclusions, including its
application of the standards of review imposed by AEDPA. See Banks v.
Horn, 271 F.3d 527, 531 (3d Cir. 2001). If a District Court has a proper
occasion to make findings of fact, they are reviewed for clear error. See
Love v. Morton, 112 F.3d 131, 133 (3d Cir. 1997).

6. Prior to the habeas petition filed with the Pennsylvania Supreme Court
in its original jurisdiction, the Pennsylvania Superior Court repeatedly
decided Mr. Chadwick's claims on the merits. In Mr. Chadwick's third
state habeas petition, Judge Battle held that the confinement was civil
because Mr. Chadwick held "the key to the jail house." App. at 143-44.
Later, the Superior Court endorsed this same view in its August 1996
opinion, stating that "[b]ecause [Mr. Chadwick] clearly holds the keys to
the jailhouse door," the "sanctions imposed upon him have not lost their
coercive effect." App. at 234. Moreover, when ruling on his fifth state
habeas petition, Judge Battle held that even if he were to adopt the
proferred "no substantial likelihood" test from Morgan v. Foretich, 564

12

therefore 28 U.S.C. S 2254(d) applies. See  28 U.S.C.
S 2254(d) (stating that the section applies to"any claim that
was adjudicated on the merits in State court proceedings").
She responds that Appel is inapposite because it merely
holds that the AEDPA standard of review does not apply
where a state court misunderstands the petitioner's claim
and decides a different claim than the one presented. See
Appel, 250 F.3d at 211. Finally, Mrs. Chadwick retorts that
Everett does not stand for the proposition that summary
adjudications are exempt from the AEDPA S 2254(d)
standard of review. She argues that such a position would
be inconsistent with the Supreme Court's decision in Weeks
v. Angelone, 528 U.S. 225, 237 (2000), in which the Court
affirmed the Fourth Circuit's application of S 2254(d)
deference where the state court had summarily rejected the
petitioner's claims. See also Weeks v. Angelone , 176 F.3d
249, 259 (4th Cir. 1999) ("Where, as here, the state
supreme court has adjudicated a claim on the merits but
has given no indication of how it reached its decision, a
federal habeas court must still apply the AEDPA standards
of review.").

Because of the Supreme Court's decision in Weeks , we
cannot agree with Mr. Chadwick that summary
adjudications by state courts are not entitled to the AEDPA
standard of review. While it is necessary for the state court
to have adjudicated the claim on the merits, it is not
necessary for the state court to have thoroughly explained
its analysis in its opinion. We, therefore, apply 28 U.S.C.
S 2254(d) in this case.

---

A.2d 1 (D.C. 1989), he was "satisfied beyond a reasonable doubt that the

contemnor has the current ability to comply and that the coercive sanctions imposed may yet cause the contemnor to ultimately comply" with the state court order. App. at 180-81. Again, the Superior Court concurred, explaining that "[a]fter careful review, we would agree that the record supports the trial court's conclusion that appellant not only has the ability to comply but also that there is a realistic possibility that he will comply with the order. Therefore, the contempt order is still coercive and not punitive." App. at 243.

13

B.

AEDPA specifies the standard of review that a federal court must apply in reviewing a state court's adjudication of a habeas claim. See 28 U.S.C. S 2254. Under that provision, a federal court may grant habeas relief only if the state court's decision was "contrary to,7 or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," id. S 2254(d)(1), or was"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. S 2254(d)(2).8 Moreover, a state court's factual findings are "presumed to be correct," and the habeas petitioner carries the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. S 2254(e)(1).

This appeal involves the "unreasonable application" prong of S 2254(d)(1). A state court decision is an"unreasonable application" of Supreme Court precedent if it"identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of the

---

7. The District Court correctly concluded that the state court ruling was not "contrary to" controlling federal law as determined by the United States Supreme Court. In Williams v. Taylor, 529 U.S. 362, 405-06 (2000), Justice O'Connor, in her controlling opinion, stated that a state court ruling is "contrary to" clearly established Supreme Court precedent for the purposes of S 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from[its] precedent." Nothing in the record suggests that the state court either applied a rule that contradicted the governing law or arrived at a result different from precedent while entertaining facts that were indistinguishable from those in any decision of the Supreme Court, which existed at the time of the state court decision. Our decision will therefore concentrate on the District Court's application of the "unreasonable application" prong.

8. The District Court agreed with all of the factual findings of the state courts, stating that "[t]he record below clearly demonstrates that the state court findings were not erroneous. This court is convinced that Mr. Chadwick has the present ability to comply with the July 22, 1994 order." App. at 18-19. Therefore, no S 2254(d)(2) inquiry is necessary here.

particular state prisoner's case." Williams v. Taylor, 529 U.S. 362, 407 (2000) (O'Connor, J., concurring) (controlling opinion). When making the "unreasonable application" inquiry, the federal habeas court should ask "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409 (emphasis added); see also Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999) (en banc) (stating the test to be "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified [under existing Supreme Court precedent]") (emphasis added).

Mr. Chadwick urges this Court to affirm the District Court's ruling that the state courts unreasonably applied relevant legal precedents. Specifically, Mr. Chadwick argues that the state courts failed to recognize that his confinement has ceased to be coercive and that, as a consequence, he cannot be held in custody any longer unless he is convicted and sentenced for criminal contempt. We disagree and hold that the state courts' decision-- denying habeas relief where the state courts repeatedly determined that Mr. Chadwick has the present ability to comply with the court order -- was not an unreasonable application of "clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. S 2254(d)(1).

1.

To determine whether a contempt order is civil or criminal, Supreme Court jurisprudence requires an examination of the "character and purpose" of the sanction imposed. See United Mine Workers v. Bagwell, 512 U.S. 821, 827 (1994); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911). Civil confinement "is remedial, and for the benefit of the complainant," Gompers , 221 U.S. at 441, whereas criminal confinement "is punitive, to vindicate the authority of the court." Id. The Bagwell Court identified the "paradigmatic coercive, civil contempt sanction" as

> involv[ing] [the] confin[ement][of] a contemnor
> indefinitely until he complies with an affirmative

> command such as an order "to pay alimony, or to
> surrender property ordered to be turned over to a
> receiver, or to make a conveyance." 221 U.S. at 442.
> . . . In these circumstances, the contemnor is able to
> purge the contempt and obtain his release by
> committing an affirmative act, and thus " 'carries the
> keys of his prison in his own pocket.' " Gompers, 221
> U.S. at 442.

512 U.S. at 828 (emphasis added) (citations omitted).

Conversely, "a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a'completed act of disobedience,' such that the contemnor cannot avoid or abbreviate the confinement through later compliance." Id. at 828-29 (citations omitted). The line drawn by the Supreme Court, then, is between ability to comply and inability to comply.9 The Supreme Court has never held that there is a constitutional limit on the length of incarceration of a civil contemnor who has the ability to comply with a coercive order but obdurately refuses to do so.

2.

As an initial matter, the District Court recognized that Mr. Chadwick undoubtedly has the present ability to comply with the July 1994 state court order. The state courts have repeatedly so found. Under AEDPA, the District Court was bound by these state court factual determinations, absent rebuttal of the presumption of correctness by clear and convincing evidence. See 28 U.S.C. S 2254(e)(1). The District Court acknowledged that the

_____

9. Bagwell does state that "[t]o the extent that [civil] contempts take on a punitive character . . . and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order." 512 U.S. at 831. But this statement does not suggest that a "paradigmatic" civil contempt order, such as the one issued in this case, can take on a punitive character simply as a result of the passage of time. Rather, it appears that the Court was referring to new types of fines. See 512 U.S. at 830-31. In any event, this statement certainly is not sufficient to show that the holding of the District Court in this case is based on clearly established Supreme Court precedent.

16

record demonstrates that the state court findings were not erroneous, and the District Court was "convinced that [Mr.] Chadwick has the present ability to comply with the July 22, 1994 order." Dist. Ct. Op. at 17. Under AEDPA, these state court factual findings must stand.

Presuming these state court factual findings to be correct, the District Court nevertheless concluded that Mr. Chadwick's confinement has become punitive and that therefore the state court decision was an unreasonable application of federal law. Although the District Court alluded to the Supreme Court's decisions in Bagwell and Gompers, the District Court relied chiefly on this Court's decision in In re Grand Jury Investigation, 600 F.2d 420 (3d Cir. 1979), to conclude that the passage of time could alter the nature of petitioner's confinement, transforming it from coercive to punitive and thus requiring observance of the procedural rights associated with criminal contempt. With this principle in mind, the District Court concluded that because Mr. Chadwick had defied the court's order for so long, there was "no substantial likelihood" that he would comply in the future and that therefore the order had lost

its coercive effect.

In In re Grand Jury Investigation, we upheld a contemnor's confinement for refusing to testify before a federal grand jury. Id. at 428. The contemnor argued that his confinement was not coercive but punitive, because "there was no substantial likelihood that he would testify before the grand jury." Id. at 422. Recognizing that some courts had applied the "no substantial likelihood of compliance" standard, we noted that the contemnor had been confined under a federal statute that limited confinement to 18 months for refusing to testify before a grand jury. Id. at 423-24. We held that, absent unusual circumstances, 18 months was not an unreasonable length for confinement in this context, and declined to inquire whether, in fact, there was no substantial likelihood that the contemnor would comply with the order to testify. Id. at 427.

Under AEDPA, the District Court's holding -- that Mr. Chadwick can no longer be held in custody for civil contempt because there is "no substantial likelihood" that

he will comply with the order -- is erroneous. The District Court incorrectly relied on dicta in one of our opinions, but AEDPA is clear that the appropriate law to apply is Supreme Court precedent. See 28 U.S.C. S 2254(d)(1) ("an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States"); see also Williams, 529 U.S. at 412 ("S 2254(d)(1) restricts the source of clearly established law to[the Supreme] Court's jurisprudence").

It is true that "federal habeas courts are [not] precluded from considering the decisions of the inferior federal courts when evaluating whether the state court's application of the law was reasonable." Matteo, 171 F.3d at 890. But this Court has clearly stated that decisions by lower federal courts may be considered only "as helpful amplifications of Supreme Court precedent." Id. It is revealing to us that in In re Grand Jury this Court characterized the"no substantial likelihood" test as an "additional constraint upon the civil contempt power" beyond that recognized in decisions by the United States Supreme Court. In re Grand Jury Investigation, 600 F.2d at 423 (emphasis added). As we noted in Matteo, 171 F.3d at 890, however, "federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed."

The Supreme Court has never endorsed the proposition that confinement for civil contempt must cease when there is "no substantial likelihood of compliance." On the contrary, in words that might as well have been written to describe the case now before us, the Bagwell Court stated that "[t]he paradigmatic coercive, civil contempt sanction

. . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver . . . .' " Bagwell, 512 U.S. at 828 (emphasis added) (citation omitted). We have no need here to decide whether In re Grand Jury Investigation remains good law in light of Bagwell. It is enough for present purposes that the "no substantial likelihood of compliance" standard has never been endorsed, much less clearly established, by the Supreme Court.

18

V.

Because the state courts have repeatedly found that Mr. Chadwick has the present ability to comply with the July 1994 state court order, we hold that it was a reasonable application of Supreme Court precedent for the state courts to conclude that there is no federal constitutional bar to Mr. Chadwick's indefinite confinement for civil contempt so long as he retains the ability to comply with the order requiring him to pay over the money at issue. Accordingly, the District Court erred in holding that the state courts' decisions were an unreasonable application of Supreme Court precedent. We, therefore, reverse the order of the District Court granting Mr. Chadwick's petition. Our decision does not preclude Mr. Chadwick from filing a new federal habeas petition if he claims that he is unable for some reason to comply with the state court's order. And, needless to say, our decision imposes no restrictions on the state courts' ability to grant relief.10

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

---

10. We do not agree with Mr. Chadwick's argument that despite our reversal of the District Court's order, the respondents in the District Court must still release Mr. Chadwick because they did not appeal. Because of our judgment, the District Court's order granting the writ no longer has any operative effect and thus cannot command his release.

19