

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-26-2006

# Wright v. Vaughn

Precedential or Non-Precedential: Precedential

Docket No. 04-3457

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wright v. Vaughn" (2006). *2006 Decisions.* Paper 6.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/6

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3457

———

ANDRE WRIGHT,
                            Appellant
v.

DONALD T. VAUGHN; THE DISTRICT ATTORNEY
OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL
OF THE STATE OF PENNSYLVANIA

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cv-03822)
District Judge: Honorable Jan E. DuBois

———

Argued February 27, 2006

Before: SLOVITER, FUENTES, and BECKER, Circuit Judges

Panel Reconstituted August 1, 2006
SLOVITER, FUENTES, and ROTH,[*] Circuit Judges

(Filed: December 26, 2006)

———

_____

[*]This case was argued before the panel of Judges Sloviter, Fuentes, and Becker. Judge Becker died on May 19, 2006. The panel was reconstituted on August 1, 2006 to consist of Judges Sloviter, Fuentes, and Roth. Judge Roth had the same briefs and record that were before the original panel and has read the transcript of the argument before the court on appeal.

Barnaby C. Wittels
LaCheen, Dixon, Wittels & Greenberg
1429 Walnut Street
13th Floor
Philadelphia, PA 19102

Carole L. McHugh   (Argued)
410 Old York Road
Jenkintown, PA 19046

     Attorneys for Appellant

Thomas W. Dolgenos   (Argued)
J. Hunter Bennett
Office of District Attorney
Three Penn Center Square
Philadelphia, PA 19107

     Attorneys for Appellees

———

OPINION OF THE COURT

———

SLOVITER, <u>Circuit Judge</u>.

Andre Wright, who is currently serving a life sentence for second-degree murder following his conviction by a jury in a Pennsylvania state court trial, appeals the denial of his petition for a writ of habeas corpus. The United States District Court for the Eastern District of Pennsylvania dismissed Wright's 28 U.S.C. § 2254 petition. Several months later, this court, pursuant to 28 U.S.C. § 2253(c)(1), granted Wright's request for a certificate of appealability ("COA") on several of his claims of ineffective assistance of counsel and violation of rights pursuant to the Confrontation Clause of the Sixth Amendment.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241, 2254; this court has jurisdiction pursuant to 28 U.S.C.

2

§§ 1291, 2253.

## I.

The parties present sharply divergent accounts of the facts, but they agree on the following: Maurice Wilson died from multiple gunshot wounds on July 8, 1975. Ballistics indicated that the shots that caused the wounds came from two different guns, neither of which was admitted into evidence at trial. Police followed a trail of blood from the apartment where they found Wilson's body to an alley close to Mark Garrick's house. Upon obtaining a search warrant, police searched Garrick's house and found bloody clothing. Esther Jones, who claimed to have witnessed the crime, testified that Eughenia Jones, one of three men convicted of the murder, had been wearing those clothes when he and two other men, including petitioner Wright, entered her apartment. Police also seized a gun, which was not tied by ballistics evidence to any of Wilson's gunshot wounds, bullets, and photographs of Garrick, Eughenia Jones, and Andre Wright, albeit not together in one photograph. Garrick, Jones and Wright were indicted in December 1980 and all three were convicted of Wilson's murder following a jury trial.

Wright's conviction was based largely on the testimony of two witnesses, Esther Jones and Earlene Gates, who offered occasionally inconsistent testimony regarding Wilson's murder. Jones and Gates initially denied knowing who killed Wilson; they later changed their minds and implicated Wright, Garrick, and Eughenia Jones. The testimony of the two witnesses was consistent as to the following: they were in their apartment along with Maurice Wilson, Esther Jones' boyfriend, when the doorbell rang. Wilson answered the door. Shortly thereafter, Ms. Jones, who was in her room, saw someone enter her room and remove a gun that Wilson kept under her pillow. Wright then entered Jones' room and forced her to come with him to the living room. Eughenia Jones woke up Gates and similarly forced Gates and her daughter into the living room. Wright instructed both women to sit on the couch while Eughenia Jones held Wilson on the floor with a gun to his head and demanded money and drugs. When Wilson said he had given the three men everything he had, the three accomplices took him into the

kitchen. Ms. Jones and Gates stayed in the living room, but they heard a loud argument taking place in the kitchen. Both heard Wilson say that he would not jump out the window. Shortly thereafter, both witnesses heard multiple gunshots, followed by the sounds of people running up and down stairs. They also heard Eughenia Jones shout that he had shot himself. Ms. Jones testified that she found Wilson's dead body in the kitchen.

Although the two witnesses agreed on the above facts, they offered inconsistent testimony on several points. Most importantly, Esther Jones testified that an unnamed man came into the apartment to see Wilson while the crime was in progress. According to Ms. Jones, the man was forced to lie on the ground in the living room and left after Wilson was taken into the kitchen and shot. In contrast, Gates testified that no such man was present on the day of the crime.

Defense witnesses offered substantially different testimony. Sharon Hillian testified that on the day of the crime, she saw Ms. Jones and two other men (none of whom was ultimately accused of the murder) enter the building where Wilson was shot. Hillian then heard four or five shots, after which Ms. Jones and the two men left the building. Wendy Phillips also testified for the defense. She testified that at the time of the murder she was standing outside the building where Wilson was killed. After hearing a gunshot, Phillips observed two tall, light-skinned black men (none of whom were the co-defendants) running down the street.

Wright was convicted of second-degree murder, robbery, and possession of an instrument of crime. On direct appeal, the Pennsylvania Superior court vacated the robbery conviction on the ground that it merged with the murder. In other respects, the court affirmed Wright's conviction. Commonwealth v. Wright, 501 A.2d 294 (Pa. Super. 1985). The Pennsylvania Supreme Court denied allowance of Wright's appeal. Wright then sought relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq., but the PCRA court denied relief. The Pennsylvania Superior Court affirmed the denial (albeit on somewhat different grounds with respect to certain claims). Commonwealth v. Wright, 738 A.2d 1059 (Pa.

4

Super. Ct. 1999). The Pennsylvania Supreme Court denied allocatur.

Wright next sought a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 2241(a) and 2254(a). The Magistrate Judge filed a Report and Recommendation concluding that Wright was not entitled to habeas relief, which the District Court adopted. Wright timely filed this appeal.

This court granted a Certificate of Appealability on the following questions: (1) whether Wright's claim that trial, post-trial, and appellate counsel were ineffective with regard to trial counsel's failure to call Joanne Turner as a witness was procedurally defaulted; (2) if that claim was defaulted, can Wright overcome the default?; (3) whether the claims of prosecutorial misconduct and violation of the Confrontation Clause deemed unexhausted by the District Court are defaulted and, if so, can Wright overcome the default?; and (4) whether Wright was denied his right to confront witness Jones.

At oral argument, the Government conceded that Wright's claim that trial, post-trial, and appellate counsel were ineffective with regard to trial counsel's failure to call Joanne Turner was not procedurally defaulted. This court then expanded the COA to address the merits of that claim–whether Wright's appellate lawyer on direct appeal was ineffective.

## II.

### A.

The principal issue before us is whether Wright's lawyer on direct appeal was constitutionally ineffective for inadequately presenting the claim that trial counsel was ineffective for failing to call Wright's alibi witness, Joanne Turner.

Wright claimed throughout his appeal that Turner should have been called as a witness because she could provide him with an alibi. Specifically, he claimed that the two of them were dating at the time, and on the day in question they both went to

5

Temple Hospital to determine if Wright had impregnated another woman. On direct appeal, he alleged that trial counsel was ineffective for not calling Turner as a witness. The Superior Court denied relief, explaining that, "[W]here a defendant alleges that his attorney was ineffective in failing to . . . call witnesses in his defense, there must be some demonstration that their testimony would be helpful." Supp. App. at 141 (internal quotation marks and citations omitted). The Court noted that Wright "has not alleged that Ms. Turner was willing or able to testify, nor has he indicated about what she would have testified or how her testimony could have benefited him. Absent such allegations, appellant[ ] [is] entitled to no relief." Supp. App. at 142.

Wright then raised the issue at his PCRA proceeding as a layered ineffectiveness claim. Specifically, he argued that post-trial and appellate counsel were ineffective for failing to preserve and properly present this issue on appeal. The PCRA court held a hearing and found that Turner was not credible. The Superior Court affirmed the PCRA court's decision. The Court first reviewed the applicable legal principles, stating:

> To establish ineffectiveness of counsel for failing to secure attendance of a witness, the appellant must show: (1) the witness existed; (2) the witness was available; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to cooperate and testify for the appellant at trial; and (5) the witness' testimony was so essential to the defense that the absence of the testimony caused an unfair verdict or sentence. Commonwealth v. Gillespie, 620 A.2d 1143, 1145 (Pa. Super. Ct. 1993) (citing Commonwealth v. Petras, 534 A.2d 483, 485 (Pa. Super. Ct. 1987)).

Supp. App. at 163. Thereafter, the Superior Court held that the ineffectiveness of counsel issue "has previously been litigated and therefore is not cognizable under the PCRA." Supp. App. at

6

163.[1]

In the habeas proceeding, the Magistrate Judge evaluated Wright's claim of "Ineffective Assistance of Appellate Counsel for Failure to Preserve the Issue of Ineffective Assistance of Trial Counsel for not Calling Joanne Turner as a Potential Witness," Supp. App. at 29, and found that it lacked merit. The Magistrate Judge noted that, "Even assuming arguendo that post-trial/appellate counsel was ineffective for failing to properly present petitioner's claim on direct appeal, petitioner must prove that he was prejudiced by that failure. Thus, our analysis requires that we determine whether petitioner's underlying claim of ineffective assistance of trial counsel would have had merit[.]" Supp. App at 31. The Magistrate Judge found that the underlying ineffective assistance of trial counsel was meritless, based on the fact that Turner had testified at the PCRA proceeding and the PCRA judge had found her not credible. The Magistrate Judge deferred to this finding and found that because Wright was not prejudiced by trial counsel's failure to call Turner, the ineffective assistance of appellate counsel was also meritless.

The District Court stated that "the Magistrate Judge correctly concluded [that Wright's claim of ineffective assistance of appellate counsel for failure to preserve the issue of ineffective assistance of trial counsel for failure to call Turner] was procedurally defaulted[.]" Wright v. Vaughn, No. 00-3822, 2004 U.S. Dist. LEXIS 14648, at *20 (E.D. Pa. July 26, 2004).

This claim presents complicated issues. The Superior Court, in deciding Wright's appeal of the denial of post-conviction relief, did not adopt the PCRA court's finding regarding Turner's credibility. Rather, the Superior Court simply found that the issue had been previously litigated. At oral argument, the Commonwealth conceded that the Superior Court erred. We have never decided whether we may look to a

_____

[1] Both parties agree that the Superior Court was in error. Only the issue of trial counsel's ineffectiveness, not appellate counsel's ineffectiveness, was previously litigated.

7

lower state court's decision of an issue on the merits if the highest state court decision is based on procedural grounds.

Wright argues that this court need not defer to the PCRA court's opinion regarding the merits of his claim because our review is limited to the last state court decision. The Commonwealth, however, contends that if the highest state court decision is decided on procedural grounds, this court may look to the last state court decision to address the merits of a case. We have found only a few courts to have addressed this issue. See, e.g., Liegakos v. Cooke, 106 F.3d 1381, 1385 (7th Cir. 1997); Nickerson v. Roe, 260 F. Supp. 2d 875, 892 (N.D. Cal. 2003). However, the issue before us is not whether the PCRA court's determination that Turner was not credible is entitled to deference. The issue for purposes of this habeas petition is whether appellate counsel was ineffective in failing to raise the issue that trial counsel was ineffective in failing to call Turner as a witness. In that regard, we agree with the decision in Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003), where the Court of Appeals bypassed the issue and assumed without deciding that there was an adjudication on the merits in the state courts and looked to whether habeas relief was warranted.

There is no reason to assume that Wright's trial counsel merely forgot that Turner was available to testify and provide Wright with an alibi. After all, he had listed Turner as an alibi witness. She testified at the PCRA hearing that she waited outside the courtroom for several days and was not called by counsel. She conceded, however, during her PCRA testimony that she never asked counsel during the trial whether or when he planned to call her.

Appellate counsel was undoubtedly aware that under Strickland v. Washington, 466 U.S. 668, 689-93 (1984), there is a "strong presumption" that the challenged action was based on trial strategy. Appellate counsel may have concluded that trial counsel had a strategic reason for not calling Turner as a witness. In the first place, she was not an unbiased witness. She was Wright's girlfriend, a relationship that undoubtedly would have elicited vigorous cross-examination. In the second place, she had, as the Government counsel described at oral argument, a

8

"long history of crimen falsi," including forgeries and frauds, and Wright has not contested this in his reply brief. Oral Argument Tr. 35, Feb. 27, 2006. There was also the matter of some discrepancy between her affidavit and her PCRA testimony as to the time she met Wright on July 7. Although we may not find that discrepancy as impairing as the prosecutor argued, the issue is not whether we believe trial counsel should have called Turner, but whether appellate counsel could have reasonably believed trial counsel had a valid trial strategy not to call her as a witness. Appellate counsel was also aware that after Wright was arrested, Turner never went to the police and informed them that Wright could not have murdered Wilson because he was with her at the critical time. We conclude that the evidence is insufficient for us to conclude that appellate counsel was ineffective.

This conclusion is supported after the fact by the conclusion of the PCRA judge, who heard Turner testify and had the opportunity to observe her demeanor, that Turner was not credible. Admittedly, the PCRA judge did not explain the basis for that conclusion, but the credibility decision made by a judge who had the opportunity to observe the witness is entitled to at least some deference, even if not exhaustively explained. See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) ("While it is necessary for the state court to have adjudicated the claim on the merits, it is not necessary for the state court to have thoroughly explained its analysis in its opinion."). We therefore reject this basis for Wright's habeas claim.

**B.**

Wright contends that his trial was "infected with pervasive misconduct on the part of the prosecutor." Wright's Br. at 48-49. In his state court appeals, Wright specified numerous instances of alleged misconduct. In his federal habeas petition, Wright specifies additional instances of alleged misconduct. The District Court refused to consider these additional instances and concluded that because Wright had not raised them in state court, they were not exhausted. Wright contends that the District Court erred in not considering these additional unexhausted instances of prosecutorial misconduct

because they corroborated his exhausted claims. According to Wright, prosecutorial misconduct claims must be evaluated in the context of the prosecutor's entire trial performance, including instances of misconduct not previously raised.

In evaluating a claim of prosecutorial misconduct, this court has previously declined to consider instances of misconduct not raised before the state courts. In Moore v. Morton, 255 F.3d 95, 103 n.7 (3d Cir. 2001), we stated, "In this appeal we will only address Moore's federal due process claim with respect to the instances of prosecutorial misconduct that he raised at each level of review before the New Jersey courts . . . . The remaining factual predicates were not fairly presented to the New Jersey courts in support of his due process claim. Therefore to the extent Moore seeks relief based on other allegations of prosecutorial misconduct, these claims are unexhausted, and now procedurally defaulted." We must follow our precedent and accordingly hold that any additional instances regarding prosecutorial misconduct have been defaulted.

With regard to Wright's non-defaulted claims of prosecutorial misconduct, we conclude that those claims are without merit. The Supreme Court has recognized that prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Such misconduct must constitute a "'failure to observe that fundamental fairness essential to the very concept of justice.'" Id. at 642 (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)). None of the instances of alleged misconduct raised by Wright were sufficient to infect the trial with unfairness. Wright's only non-frivolous claim, i.e., that the prosecutor displayed a gun that was not one of the murder weapons, is not sufficient to render the trial unfair.

Wright contends that the procedural default of instances of prosecutorial misconduct, and indeed of all other claims, may be excused under the "actual innocence" or "miscarriage of justice" doctrine. In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court created a narrow exception to the rule that federal courts cannot hear claims that have not been raised in

state courts. The Court held that "[I]f a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." Id. at 316. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner "must also support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Id. at 324.

The affidavits presented by Wright do not establish his innocence. The affidavits show nothing other than a prosecution witness' possible motivation for killing Wilson. It follows that Wright does not meet the Schlup standard and he cannot overcome default.

## C.

Wright claims that he was denied the right to effectively question prosecution witnesses in violation of the Confrontation Clause of the Sixth Amendment and Due Process Clause of the Fourteenth Amendment. Specifically, Wright argues that the trial court committed constitutional error by disallowing evidence that would have helped him establish two prongs of his defense, i.e., that Esther Jones, one of the prosecution's two principal witnesses, had reason to falsely implicate Wright in Wilson's murder; and that many people other than Wright had an interest in killing the decedent.

Wright argues that Ms. Jones had several reasons for lying about his involvement in the murder: she may have been directly involved in the murder and interested in shifting blame elsewhere; she may have been afraid to incur the wrath of the real killers; and she may have wanted to exact revenge against Wright for allegedly informing Wilson that she had been having an affair with another man. As to the first of these motives, Wright sought to prove that Jones had two reasons for participating in the murder: first, because she and her boyfriend

11

stood to profit from Wilson's death by taking over his role as one of the premier drug dealers of North Philadelphia; and second, because Wilson had physically abused her. Wright also sought to establish in several ways that others (aside from Ms. Jones) had a motive to kill Wilson by noting that Wilson, at the time he was killed, was facing murder charges in a war between competing drug dealers and by proving that Wilson had a history of alienating other drug dealers and customers.

The District Court noted that the trial court often thwarted Wright's efforts to introduce evidence of the above, but it nonetheless rejected Wright's claims under the Confrontation Clause and the Due Process Clause. It found that while Wright's cross-examination was indeed erroneously curtailed, Wright was not prejudiced by this error because Jones was able to introduce this information through other witnesses.

The constitutional nature of the right to question witnesses is well established. An accused's Sixth Amendment right "to be confronted with the witnesses against him" is "incorporated into the Fourteenth Amendment and therefore available in state proceedings." Olden v. Kentucky, 488 U.S. 227, 231 (1988). The right to confront witnesses includes the right to conduct reasonable cross-examination. Id. "Subject to 'the broad discretion of a trial judge to preclude repetitive and unduly harassing litigation . . ., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.'" Id. (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)). Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id. (internal quotation marks and citations omitted.)

Evidentiary rulings in violation of the Confrontation Clause are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Because Wright is a habeas petitioner, in order to prevail on this claim he must show that the trial court's decision to curtail his cross-examination was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Insofar as the trial court concluded that cross-examining the witness regarding

12

her own motives for the crime was impermissible because it was irrelevant, the trial court acted in a manner that was contrary to law. 28 U.S.C. § 2254(d)(1). Petitioner is correct that under Pennsylvania law, as well as under federal law, evidence about the possible motive of persons other than the defendant is admissible. We thus consider whether Wright was prejudiced by the trial court's error. Our review of the record discloses that there were numerous instances in which Wright sought to cross-examine Jones but was prevented from doing so by the trial court's rulings.

On the other hand, much of the evidence that Wright sought to introduce ultimately came before the jury in one way or the other. In particular, there was evidence that Wilson was a major drug dealer and that Ms. Jones, who was his girlfriend, helped him, was sometimes present when he dealt drugs, was herself dealing drugs and had tried to keep the grand jury from knowing about her participation. Much of this evidence came in through defense counsel's cross-examination of Ms. Jones. In defense counsel's closing argument to the jury, counsel argued not only that Ms. Jones had a compelling motive to murder Wilson, i.e., the opportunity to take over Wilson's drug business, but that other drug dealers could also have had that motive. [see N.T. 10/22/81 at 43-44; 60-61; 108-111; 132-33]. In its opinion, the District Court cited numerous instances in which the trial court permitted trial counsel to explore the issue of the motive of Ms. Jones and others to murder Wilson.

This was not a perfect trial–far from it. But we cannot conclude that the trial court's rulings on the scope of cross-examination of Ms. Jones were so defective as to amount to constitutional error. Therefore, we reject this basis for grant of a writ of habeas corpus.

### III.

In their excellent brief on appeal in support of Wright's petition for a writ of habeas corpus and during the oral argument, counsel for Wright have raised a plethora of issues. We have limited our discussion above to the issues we believe warranted a full exposition, but we have fully considered and now reject each

13

of the other issues raised.  For the reasons set forth above, we will affirm the judgment of the District Court denying Wright's petition for a writ of habeas corpus.